UNITED STATES COURT OF INTERNATIONAL TRADE

```
------------------------------------------------------------- X
ETEROS TECHNOLOGIES USA, INC.          :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :          No. 21-00287
                                       :
UNITED STATES                          :
                                       :
          Defendant.                   :
------------------------------------------------------------- X
```

## COMPLAINT

Plaintiff, ETEROS TECHNOLOGIES USA, INC., by and through its undersigned counsel, for its Complaint in this matter against Defendant, the UNITED STATES, does hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1.      This action is commenced by Plaintiff Eteros Technologies USA, Inc. ("Plaintiff" or "Eteros") to contest the deemed denial of its protest against the exclusion of certain merchandise—consisting of certain motor frame assemblies (the "Subject Merchandise") which will be assembled and combined with other parts in the United States to create the Mobius M108S Trimmer, an agricultural machine—from entry into the United States.

## JURISDICTION

2.      This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

## PARTIES

3.     Plaintiff Eteros is a Washington State company with its principal place of business in Las Vegas, NV, at Unit 600-6175 S. Sandhill Road, Las Vegas, NV 89120. Eteros is engaged in the importation, manufacture, and distribution of agricultural machinery for the cannabis and hemp processing industry. Eteros' customers are primarily processors of hemp, which, as discussed herein, is legal under Federal law. Additionally, Eteros distributes its merchandise to state-licensed processors of legal cannabis whose use of the merchandise is subject to stringent state authorization and licensing systems. Eteros holds a hemp processing license issued by the State of Nevada. *See* Memorandum in Support of Eteros' Protest (dated May 11, 2021) ("Eteros' Protest Memo"), Complaint Exhibit ("Compl. Ex.") A, State of Nevada Department of Agriculture Certificate No. 32-202128H (approved March 11, 2021), at Protest Exhibit ("Protest Ex.") B. Plaintiff's imported merchandise has been excluded by CBP at the Port of Blaine, WA, Port Code 3004.

4.     Defendant United States is the federal defendant. The actions complained of herein were undertaken by its agency U.S. Customs and Border Protection ("Customs" or "CBP"), which is a component of the U.S. Department of Homeland Security ("DHS"). CBP is the federal agency charged with making admissibility determinations under 19 U.S.C. § 1595a.

## STATEMENT OF FACTS

### Entry, Notice of Detention, and Description of Subject Merchandise

5.     Eteros imported the subject merchandise, described below, into the U.S. at the Port of Blaine, WA, under cover of Entry No. 5515878880, on or around April 10, 2021.

6.     The Subject Merchandise in Entry No. 5515878880 was presented to CBP for examination on or around April 10, 2021. CBP issued a Notice of Detention on April 10, 2021.

*See* Eteros' Protest Memo, Compl. Ex. A, Notice of Detention and Custody Receipt for Detained Property (April 10, 2021), at Protest Ex. A.

7.    The Subject Merchandise consists of certain motor frame assemblies which will be assembled and combined with other parts in the United States to create an ultimate end item known as the Mobius M108S Trimmer, an agricultural machine. The Subject Merchandise is depicted below:



8.      The Mobius M108S Trimmer is designed to separate the leaf from the flower of cannabis or other plant material. The machine is depicted below:



*See e.g.,* Eteros' Protest Memo, Compl. Ex. A, Mobius M108S Manual, Protest Ex. C (*see id*. at 9 for a parts diagram of the Mobius M108S); *see also*, Eteros' Protest Memo, Compl. Ex. A, at 3-5 (description of product). Operation of the Mobius M108S begins with the insertion of cut and untrimmed agricultural materials into the infeed machine opening. The product enters a cylindrical tumbler—known as the AirThread Tension Tumbler—which is enclosed safely within a fold down lid. The consistent gaps between the tumbler and blades makes for a consistent, tightly trimmed end-product (0.25-inch gaps for maximum cutting blade access), which enables a faster trim time (product spends less time in the tumbler), less surface area to collect resin (reducing cleaning time

and precious resin loss), and a closer trim. The Mobius M108S is equipped with three, self-sharpening blade cartridges. Each cartridge consists of a surgical-grade stainless steel bed knife flexed against a case-hardened helical blade with constant, gap-free contact to create a shearing cut identical to scissors. Three 36-inch (91 cm) blade cartridges set side-by-side offer 108-inches (274 cm) of trim opportunity with each pass of the tumbler. Product is trimmed faster and spends less time in the tumbler, minimizing the risk of impact damage. Each TriFlex blade cartridge is custom made using proprietary tooling. Helical blades are nitrided to harden their surface and black-oxidized to prevent rusting. Cartridges are held in place by tension. The tumbler and blade cartridges are depicted below (*see* Mobius M108S Manual, Protest Ex. C at 9):



A fan beneath the tumbler and blades creates air flow, drawing air in from the top and creating a vacuum that pulls inserted agricultural materials through the gaps and in contact with the three cutting blades. The Mobius M108S has an integrated separation system, whereby both the trim separator and vacuum are built directly into the body of the M108S, reducing the machine's footprint. As agricultural material moves through the machine, leaf and stem material ("trim material") is sucked through the tumbler gaps where it is cut by the blades. Viable trim material is

then sucked into the separator compartment at the back of the machine, and finished agricultural material exits the machine through the outfeed opening.

**CBP CF 28 Requests For Information and Eteros' Responses**

9.      On April 16, 2021, CBP issued a CF 28 Request for Information to Eteros inquiring about the Subject Merchandise, its manufacturer and intended end-use, whether it will be assembled/combined with other articles/materials, and requesting product instructions and other materials. Eteros timely responded on April 19, 2021. In that submission, Eteros accurately responded that the Mobius M108S has two end-products after processing: (i) cannabis flower which has had all leaf and stem material removed; and (ii) the "trim" consisting of leaf and stem material. It explained further that the input product is plant material that has been removed form the stalk of the plant, noting that "The Mobius M108S can also be used on any agricultural material that has a dense portion larger than 0.25" diameter, and a protruding portion smaller than 0.25" that is required to be removed and separated, (examples include hops, grapes, various flowers, herbs, etc)." Eteros also explained the history of its entry into the U.S. market, stating:

> The Mobius M108S was designed in Canada in 2016. Eteros' initial target market was large, Canadian, federally licensed producers of cannabis. The company made a conscious decision not to sell into the US market, because at that time, all forms and variants of the cannabis plant were federally illegal in the United States. After the Agricultural Improvement Act of 2018 was signed into law in December 2018, Eteros saw an opportunity to provide its equipment to a newly legal, emerging market in the US, namely low THC, high CBD cannabis production (legalized and defined as "hemp" in the Agricultural Improvement Act of 2018). We knew our machinery would be an ideal fit for the processing needs of America's emerging hemp farmers. Eteros began selling equipment into the US market in 2019, and it was apparent that the need for quality, commercial-scale cannabis processing machinery was growing quickly (*see*: https://hempindustrydaily.com/wp-content/uploads/2020/08/hemp-harvest-2020_FINAL.pdf ).

*See* Eteros' Protest Memo, Compl. Ex. A, CBP CF28 of April 16, 2021, and Eteros' Response of April 19, 2021, Protest Ex. D (enclosures not included).

10.     On April 27, 2021, CBP issued a second CF 28 Request for Information asking whether the Subject Merchandise will "be used at any point, in any way, to manufacture, produce, or process a product that has a [THC] concentration over 0.3 percent?" Eteros responded as follows:

> In our responses of April 19, we explained that the items entered in Entry Number 55158788808 will be assembled with other materials to create an ultimate end item known as the Mobius M108S. Eteros did not bring its products to market in the U.S. until after the Agricultural Improvement Act of 2018—which legalized "hemp"—was signed into law. Eteros obtained a Hemp Processing License so that it can demonstrate the primary intended use of the Mobius M108S in processing hemp to prospective US-based customers.
>
> CBP now asks whether the articles will be used with any cannabis material with a THC concentration over 0.3 percent. As described in our initial responses, any plant material that has a dense flower structure with a protruding leaf could be used with the device. More specifically, the Mobius M108S effectively processes any agricultural material that has a dense portion larger than 0.25" diameter, and a protruding portion smaller than 0.25" that is required to be removed and separated. Notably, the physical structure of cannabis plant material does not meaningfully change according to the THC content of any given cannabis plant or harvest. As the input allowances for the Mobius M108S permit the insertion of cannabis, an end user could insert plant materials that have a THC content exceeding the 0.3 percent threshold. Accordingly, while the machine is capable of use with cannabis exceeding the 0.3 percent threshold, this is not the primary intended use of the machine in the USA.

*See* Eteros' Protest Memo, Compl. Ex. A, CBP CF28 of April 27, 2021, and Eteros' Response of April 29, 2021, Protest Ex. E. CBP then asked *inter alia* why Eteros believes the imported article is authorized under Federal law to enter the United States. Eteros responded (*id.*):

> Eteros' refers to its response to CF 28 question 2. By way of supplementation, we respectfully urge CBP to appreciate our limitations in responding to this inquiry. We are not trying to evade CBP's questions, which we interpret as seeking to learn whether the merchandise meets the 21 U.S.C. § 863(d) definition of "drug paraphernalia," however, we simply lack access to end-user records. The Mobius M108S device does not detect and report to Eteros the THC content of cannabis material processed by end-users. Eteros cannot prevent users from feeding appropriately sized agricultural material of any kind into the machine for processing. Likewise, Eteros has no access to, nor authority to demand, its customer's processing records.

We reiterate that the User Manual for the M108S demonstrates that Eteros' customers and end-users are only authorized to use the equipment on legal plant matter (see Mobius M108S Manual.pdf, page 5).

In any case, as explained in response to CF28 question 2, below, we are advised that our merchandise is not subject to the import prohibitions of 21 U.S.C. § 863(a)(3) for at least two reasons: (i) as explained above, the primary intended use of the Mobius M108 in the USA is with "hemp"; and (ii) the Mobius M108S meets the statutory authorization exemption of 21 U.S.C. § 863(f)(1).

First, any equipment, product, or material of any kind which is primarily intended or designed for use with "hemp" is not "drug paraphernalia" under 21 U.S.C. § 863(d) because "hemp" is not a controlled substance. See 21 U.S.C. § 802(16)(B) ("marihuana does not include … hemp, as defined in section 1639o of title 7"); 7 U.S.C. § 1639o(1) (defining "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol ["THC"] concentration of not more than 0.3 percent on a dry weight basis.").

Second, the operation of the Mail Order Drug Paraphernalia Control Act of 1986 ("Paraphernalia Control Act ") (codified at 21 U.S.C. § 863) is inapplicable where a State has enacted laws legalizing the use, possession, and distribution of marijuana. The federal authorization exemption, 21 U.S.C. § 863(f)(1), makes clear that CBP has no authority to seize (or exclude, by refusing to make an admissibility determination) imported "drug paraphernalia," as defined under § 863(d), as an importation "contrary to law" under 19 U.S.C. § 1595a(c), or according to the seizure provisions of § 863(c), when state law authorizes the manufacture, possession, or distribution of such goods.

The Paraphernalia Control Act makes it "unlawful for any person to, among other things, "import or export drug paraphernalia." *See* 21 U.S.C. § 863(a)(3). The Paraphernalia Control Act makes unlawful certain paraphernalia-related activities set forth in § 863(a), but this prohibition is not absolute. The statutory authorization exemption of the Paraphernalia Control Act at § 863(f)(1) requires CBP's consideration of local, state, and/or federal authorizations:

> (f) Exemptions. This **section** shall not apply to—
>
> (1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items.

The § 863(f)(1) exemption removes all prohibitions on "drug paraphernalia" included in "the section"—*i.e.*, the entirety of 21 U.S.C § 863, including the import prohibition of § 863(a)(d)—for those authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia." Thus, even if Eteros'

Mobius M108S were only used with marijuana, its importation into Washington State would not be subject to the import prohibitions of § 863(a)(3).

Nearly every state has legalized marijuana in one form or another. This includes Washington State (where the goods were imported) which legalized the recreational use of marijuana in 2012 when its citizens voted to pass Initiative 502 ("I-502"), see 2013 Wash. Laws. ch. 3, § 20(3). The Washington State Liquor and Cannabis Board ("WSLCB") regulates Washington's cannabis market, creating and enforcing rules regarding marijuana. Per the Revised Code of Washington ("RCW"), a person in the State of Washington violates the drug paraphernalia laws if they use, deliver, or possess any "equipment, products, [or] materials of any kind" to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body **a controlled substance other than marijuana**." RCW 69.50.412; *see also* WAC 314-55-010 (excluding from the definition of "paraphernalia" all "items for **growing**, **cultivating**, and **processing marijuana**[.]"). Accordingly, under Washington State law, the possession, manufacture, or distribution of marijuana-related "equipment, products, and materials of any kind" is authorized.

The federal laws clearly empower States to enact laws that take advantage of the 21 U.S.C. § 863(f)(1) authorization exemption so that those doing lawful business under the laws of a relevant State can be shielded from the consequences that may otherwise attach under the Paraphernalia Control Act.

As demonstrated, Washington State laws concerning cannabis paraphernalia affirmatively authorize conduct otherwise prohibited by the federal Paraphernalia Control Act, which means that federally prohibited paraphernalia activities are deemed "lawful" and exempt from the Paraphernalia Control Act's prohibitions—including the federal prohibition on importation contained at 21 U.S.C. § 863(a)(3), and the attaching consequences, including seizure and forfeiture under § 863(c). Importations of goods satisfying the § 863(d) definition of "drug paraphernalia" are exempt from the federal prohibition when imported into Washington State. By extension, there can be no claim that Eteros has made an importation "contrary to law" under 19 U.S.C. § 1595a(c).

**CBP Exclusion**

11.    By email of May 10, 2021, CBP wrote to Eteros stating "Attached is a letter to inform you that the merchandise on Entry 551/587888808, detained at the Blaine port-of entry on April 10, 2021, is being excluded," and issued to Eteros a Notice of Exclusion (May 10, 2021),

Eteros' Protest Memo, Compl. Ex. A, at Protest Ex. F. In the Notice of Exclusion, CBP stated that it:

> … has determined that the merchandise under Entry 551/58788808 is drug paraphernalia, as defined under 21 U.S.C. § 863(d). In your response, you reference 'legalized hemp' and state that the primary intended use of the Mobius M108S, is for processing hemp. In the User Guide, however, your product is advertised as 'the world's best cannabis and hemp trimmer.' To this end, it appears the primary use is not just for legalized hemp, but for a product identified under the Controlled Substances Act.

*Id.* CBP also rejected Eteros' assertions regarding 21 U.S.C. § 863(f)(1), stating that CBP "maintains that 21 U.S.C. § 863(f)(1) does not provide an importer a means to enter drug paraphernalia." *Id.* CBP instructed Eteros that "under the authority of 19 C.F.R. § 151.16(j)," the Subject Merchandise "is hereby excluded from entering the United States. In accordance with 19 U.S.C. § 1514, you have the right to protest CBP's decision to exclude." *Id.*

**Eteros' Protest Against Exclusion**

12.     Eteros timely protested CBP's exclusion of the Subject Merchandise on or around May 11, 2021, and requested that CBP decide the protest pursuant to *inter alia* 19 C.F.R. § 1499(c), 19 C.F.R. § 174.21(b), which requires review and action by CBP "within 30 days from the date the protest was filed." *Id.* ("Any protest filed pursuant to this paragraph which is not allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day for purposes of 28 U.S.C. 1581."). *See* Eteros' Protest Memo, Compl. Ex. A. CBP received the Protest and supporting documents on May 12, 2021.

13.     The Subject Merchandise was imported into the United States at the Port of Blaine, WA. Washington State is a State which has legalized hemp and marijuana and whose laws

authorize the possession and use of devices for the processing of cannabis, such as the Mobius M108S Trimmer.

14.     The Subject Merchandise is intended for, and necessary for, the Mobius M108S Trimmer which is assembled at Plaintiff's premises in Las Vegas, NV. Nevada is a State which has legalized hemp and marijuana and whose laws authorize the possession and use of devices for the processing of cannabis, such as the Mobius M108S Trimmer.

15.     The protest, and supporting materials submitted therewith, contended that the Subject Merchandise is used in the hemp and cannabis industry but is not an importation contrary to law under 19 U.S.C. § 1595(a)(c)(2), and is not prohibited "drug paraphernalia" under 21 U.S.C. § 863(a). *See e.g.,* Eteros' Protest Memo, Compl. Ex. A. Rather, it is subject to the authorization exemption of 21 U.S.C. § 863(f)(1), which allows those "authorized by local, State, or Federal law" to engage in the otherwise prohibited conduct, including the importation of the Subject Merchandise.

**Deemed Denial of Eteros' Protest By Operation of Law**

16.     Eteros' Protest was deemed denied pursuant to 19 C.F.R. § 174.21(b) on June 11, 2021—*i.e.,* "the 30th day after the day on which the protest was filed … " *Id.*

17.     Plaintiff timely filed this action to challenge the denial of its protest on June 11, 2021.

## COUNT I

18.     Paragraphs 1 through 17 are restated and incorporated by reference as though fully set out herein.

19.     Merchandise may be excluded from entry, and subjected to other sanctions, if *inter alia* "its importation or entry is subject to any restriction or prohibition which is imposed by law

relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute[.]" 19 U.S.C. § 1595a(c)(2)(A).

20.     Merchandise imported into the United States in violation of the drug paraphernalia restrictions of the Mail Order Drug Paraphernalia Control Act of 1986 ("Paraphernalia Control Act"), Pub. L. 99-570, 100 Stat. 3207-51, 21 U.S.C. § 863, *see also* Controlled Substances Act ("CSA"), Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended at 21 U.S.C. §§ 801-972), can be excluded, and seized by CBP under authority of 19 U.S.C. § 1595a(c)(2)(A). 21 U.S.C. § 863. The CSA makes it "unlawful for any person—

> (1) to sell or offer for sale drug paraphernalia;
>
> (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or
>
> (3) to import or export drug paraphernalia.

*Id.* at § 863(a).

21.     "Marijuana" is defined as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 806(a)(16)(A). "Marijuana" is classified as a Schedule I controlled substance under federal law, making it unlawful for any person to knowingly possess, dispense, distribute, or manufacture it. 21 U.S.C. § 841(a).

22.     "Hemp" is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol ["THC"] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Hemp

plants naturally contain a variable amount of the compounds CBD and typically contain less than 1% THC. Marijuana, on the other hand, typically contains 5% THC or more. CBD can also be found in cannabis strains that possess significant levels of THC compounds; in other cases, CBD is found in strains that do not possess more than trace amounts of THC.

23.    "Drug paraphernalia," as statutorily defined, covers a wide range of items used to prepare, conceal, and ingest controlled substances. According to the Paraphernalia Control Act, which is the best evidence of its contents, "Drug Paraphernalia" is defined as:

> … any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body …

*Id.* at § 863(d).

24.    The Paraphernalia Control Act makes unlawful certain paraphernalia-related activities, *id.* at § 863(a), but the prohibition is not absolute.

25.    Congress enacted a statutory exemption to the Paraphernalia Control Act at 21 U.S.C. § 863(f)(1), which demands consideration of local, state, and/or federal authorizations of the manufacture, possession, or distribution of merchandise meeting the federal definition of "drug paraphernalia," providing (emphasis added):

> (f) Exemptions.  This **section shall not apply to**—
>
> > (1) **any person authorized by local, State, or Federal law** to manufacture, possess, or distribute such items.

This exemption removes the prohibitions of § 863(a) for any "person"—including corporate persons—authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia."

26.     Although prohibited by federal law, 21 U.S.C. § 841(a), nearly every state has legalized marijuana in one form or another. *See* Robert A. Mikos, *Only One State Has Not Yet Legalized Marijuana in Some Form ...* , Vand. U. (July 16, 2018), https://my.vanderbilt.edu/marijuanalaw/2018/11/update-voters-in-3-of-4-states-approve-marijuana-legalization-measures (last accessed March 17, 2021). Numerous states have enacted laws legalizing, *inter alia*, the growing, processing, possession and distribution and sale of marijuana for, *inter alia*, recreational and medical use. Numerous states have also enacted laws and regulations legalizing and authorizing the manufacture, possession, and distribution of merchandise meeting the federal definition of "drug paraphernalia," *see* 21 U.S.C. § 863(d).

27.     Congress prescribed that the operation of the Paraphernalia Control Act would be inapplicable in cases where a State has enacted laws legalizing, taxing, and/or regulating the use, possession, and distribution of medical and recreational marijuana. The federal authorization exemption, 21 U.S.C. § 863(f)(1), states that CBP has no authority to seize (or exclude, by refusing to make an admissibility determination) imported "drug paraphernalia," as defined under § 863(d), as an importation "contrary to law" under 19 U.S.C. § 1595a(c), when state law serves to authorize its manufacture, possession, or distribution. Congress clearly empowered States to enact laws that take advantage of the 21 U.S.C. § 863(f)(1) authorization exemption so that all persons (whether individual or corporate) doing lawful business under the laws of a relevant State(s) can be shielded from the consequences that may otherwise attach under the Paraphernalia Control Act.

28.     Plaintiff Eteros Technologies USA, Inc. is a Washington State company with its principal place of business in Las Vegas, Nevada. The Subject Merchandise which is the subject of this action was imported into the United States before being detained and excluded at the Port of Blaine, WA.

29.     Marijuana and hemp are legal for medical and recreational use in Washington State and Nevada.

30.     Manufacture, possession, and distribution of cannabis paraphernalia is authorized under the laws of Washington State and Nevada. By invoking the authorization exemption of 21 U.S.C. § 863(f)(1), the laws of Washington State and Nevada *inter alia* eliminate the federal prohibition on importing cannabis paraphernalia, and consequently, the importation of such products is not an importation "contrary to law" under 19 U.S.C. § 1595a(c).

31.     While 21 U.S.C. § 863(f)(1) clearly exempts from the prohibitions of 21 U.S.C. § 863(a) any person who is authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia," CBP has not consistently recognized this statutory exemption in determining the admissibility of cannabis and hemp processing equipment and parts thereof when imported into those states that have explicitly authorized the possession, distribution, and manufacture of merchandise meeting the federal definition of "drug paraphernalia." 19 U.S.C. § 863(d).

32.     CBP's exclusion of the Subject Merchandise is unlawful and disregards the clear intent of Congress which seeks to recognize State laws governing merchandise meeting the federal definition of "drug paraphernalia." *See* 21 U.S.C. § 863(d).

33.     Defendant wrongfully excluded the Subject Merchandise from entry. The deemed denial of Eteros' Protest is unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in Plaintiff's favor, order that the Subject Merchandise is admissible pursuant to 21 U.S.C. § 863(f)(1) and direct Defendant to allow entry of the Subject Merchandise; and further that the Court award Plaintiff costs of suit plus attorneys' fees; and to provide Plaintiff with such other and further relief as this Court may deem just.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
    Richard F. O'Neill
    999 Third Ave., Ste. 2525
    Seattle, WA 98104
    (206) 518-9335
    roneill@npwny.com

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

Dated: June 11, 2021

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
-------------------------------------------------------------- X
ETEROS TECHNOLOGIES USA, INC.                 :
                                              :
              Plaintiff,                      :
                                              :
       v.                                     :        No. 21-00287
                                              :
UNITED STATES                                 :
                                              :
              Defendant.                      :
-------------------------------------------------------------- X
```

## COMPLAINT EXHIBIT LIST

| Compl. Ex. | Description |
|------------|-------------|
| A | CBP-Stamped CF 19 Protest and Memorandum of Points and Authorities in Support of Protest |

Protest Ex. A: CBP Notice of Detention (dated April 10, 2021)

Protest Ex. B: State of Nevada Department of Agriculture Certificate No. 32-202128H (approved March 11, 2021)

Protest Ex. C: Mobius M108S Manual

Protest Ex. D: CBP CF 28 of April 16, 2021 and Eteros' Response of April 19, 2021

Protest Ex. E: CBP CF 28 of April 27, 2021 and Eteros' Response of April 29, 2021

Protest Ex. F: CBP Notice of Exclusion (dated May 10, 2021)

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
----------------------------------------------------------------- X
ETEROS TECHNOLOGIES USA, INC.             :
                                          :
            Plaintiff,                    :
                                          :
      v.                                  :        No. 21-00287
                                          :
UNITED STATES                             :
                                          :
            Defendant.                    :
----------------------------------------------------------------- X
```

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing COMPLAINT to be served by CM/ECF upon the following persons on this 11th day of June, 2021:

<u>DEFENDANT, UNITED STATES</u>
Attorney-in-charge
International Trade Field Office
Commercial Litigation Branch, Civil Division
Room 346
U.S. Department of Justice,
26 Federal Plaza, Ste. 346
New York, New York 10278

<u>/s/ Patrick B. Klein</u>
Patrick B. Klein
Neville Peterson LLP