UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
ETEROS TECHNOLOGIES USA, INC.      :
                                    :
                   Plaintiff,      :
                                    :    Court No. 21-00287
                   v.           :
                                    :
UNITED STATES,                  :
                                    :
                  Defendant.   :
_____:

## **ORDER**

      Upon consideration of defendant's cross motion for judgment on the pleadings, plaintiff's

motion for judgment on the pleadings, other papers on file, and upon due deliberation; it is

hereby

      **ORDERED** that defendant's motion be and is hereby is granted; and it is further

      **ORDERED** that plaintiff's motion be and is hereby is denied; and it is further

      **ORDERED** that the action is dismissed.


                                 _____
                                 HON. GARY S. KATZMANN, JUDGE

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC. | : |
| | : |
| Plaintiff, | : |
| | : Court No. 21-00287 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

### **DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12(c) of the Rules of the United States Court of International Trade,
defendant respectfully requests that the Court enter judgment for the United States on the
pleadings.  The reasons for our motion are set forth in the accompanying memorandum.

WHEREFORE, defendant respectfully requests that an order be entered granting
defendant's motion for judgment on the pleadings, dismissing this action, and granting defendant
such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

November 5, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____

| | | |
|---|---|---|
| ETEROS TECHNOLOGIES USA, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 21-00287 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :


**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION
FOR JUDGMENT ON THE PLEADINGS AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

QUESTION PRESENTED ................................................................................................. 2

BACKGROUND ................................................................................................................ 2

     A.  Administrative History of the Entry ................................................................ 2

     B.  Legal Framework Governing the Importation of Drug Paraphernalia ........................ 4

     C.  CBP's Enforcement of the Prohibition Against Importation of
         Drug Paraphernalia in 21 U.S.C. § 863(a)(3) ............................................. 6

SUMMARY OF THE ARGUMENT ................................................................................ 8

ARGUMENT ..................................................................................................................... 9

I.       STANDARD OF REVIEW ................................................................................... 9

II.      ETEROS'S MERCHANDISE IS DRUG PARAPHERNALIA ...................................... 10

III.    DRUG PARAPHERNALIA MAY NOT BE IMPORTED ........................................... 13

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Barron v. Reich,*
  13 F.3d 1370 (9th Cir. 1977) ........................................................................... 10

*Connecticut Nat. Bank v. Germain,*
  503 U.S. 249 (1992) ......................................................................................... 14

*Duncan v. Walker,*
  533 U.S. 167 (2001) ......................................................................................... 15

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) .................................................................................... 16, 17

*FYH Bearings Units USA v. United States,*
  753 F. Supp. 2d 1348 (Ct. Int'l Trade 2011) .............................................. 9, 10

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
  189 F.3d 971 (9th Cir. 1999) ........................................................................... 10

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982) ......................................................................................... 12

*N.Z. Lamb Co. v. United States,*
  40 F.3d 377 (Fed. Cir. 1994) ............................................................................. 9

*Posters 'N' Things, Ltd. v. United States,*
  511 U.S. 513 (1994) .................................................................................... 11, 12

*Robinson v. Shell Oil Co.,*                                                        117
  S. Ct. 843, 519 U.S. 337 (1997) ...................................................................... 14

*Rubin v. United States,*
  449 U.S. 424 (1981) ......................................................................................... 14

*Sharp v. United States,*
  580 F.3d 1234 (Fed. Cir. 2009) ....................................................................... 15

*U.S. v. Main Street Distributing Inc.,*
  700 F. Supp. 655 (EDNY 1988) ...................................................................... 10

*United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc.,*
  484 U.S. 365 (1988) ......................................................................................... 16

*United States v. Assorted Drug Paraphernalia Valued at $29,627.07, and Jason Fernandez*,
   Civ. No. 18-143-GJF/SMV (DNM 2018) (2018 WL 6630524 ................................................. 18

*United States v. Inn Foods, Inc.*,
   264 F. Supp. 2d 1333 (Ct. Int'l Trade 2003) ............................................................................. 9

**Statutes**

7 U.S.C. § 1639o ............................................................................................................................... 11

7 U.S.C. § 1639q ............................................................................................................................... 14

19 U.S.C. § 1499(c)(5)(B) ................................................................................................................. 4

19 U.S.C. § 1595a(c)(2) ............................................................................................................. 2, 6, 9

19 U.S.C. § 1595a(c)(2)(A) ........................................................................................................ 1, 7, 8

19 U.S.C. § 1595a(c)(5) ..................................................................................................................... 9

19 U.S.C. § 1595a(c)(5)(B) ........................................................................................................... 7, 8

21 U.S.C. § 801 ............................................................................................................................. 6, 8

21 U.S.C. § 802(6) ........................................................................................................................... 11

21 U.S.C. § 802(16) ......................................................................................................................... 11

21 U.S.C. § 802(16)(B)(i) ................................................................................................................ 11

21 U.S.C. § 812(c) ........................................................................................................................... 11

21 U.S.C. § 844(a) ........................................................................................................................... 16

21 U.S.C. § 857 ............................................................................................................................. 5, 6

21 U.S.C. § 863 .......................................................................................................................... passim

21 U.S.C. § 863(a) .................................................................................................................... 1, 4, 17

21 U.S.C. § 863(a)(3) ................................................................................................................. passim

21 U.S.C. § 863(d) .................................................................................................................... passim

21 U.S.C. § 863(d)(1)-(15) ........................................................................... 12

21 U.S.C. § 863(e) ......................................................................................... 11

21 U.S.C. § 863(f) .......................................................................................... 10

21 U.S.C. § 863(f)(1) ................................................................................ *passim*

21 U.S.C. § 863(f)(2) ..................................................................................... 17

21 U.S.C. § 885(a)(1) ..................................................................................... 10

28 U.S.C. § 1581(a) ......................................................................................... 4

Revised Code of Washington (RCW) 69.50.412, included under Part III, Section 22, of
 Washington I-502, which was passed in November, 2012 ............................... *passim*

**Rules**

USCIT Rule 12(b) .......................................................................................... 10

USCIT Rule 12(c) .................................................................................. 1, 9, 10

**Regulations**

7 C.F.R. § 990.3(a)(3) .................................................................................... 14

7 C.F.R. § 990.3(a)(7) .................................................................................... 14

19 C.F.R. § 151.16(j) ............................................................................... *passim*

**Other Authorities**

USITC Publication, September 1989, Importation of Certain Drug Paraphernalia Into the United
 States, Report on the Committee on Finance, U.S. Senate, on Investigation No. 332-277 Under
 Section 332 of the Tariff Act of 1930 ..................................................................... 5

Hearing Before the Subcommittee on Crime of the Committee on the Judiciary House of
 Representatives, Ninety-Ninth Congress, Second Session on H.R. 1625 ("H.R. 1625
 Hearing"), testimony of House Rep. Levine, who introduced H.R. 1625, known as the Mail
 Order Drug Paraphernalia Control Act. ............................................................. 6, 17

Controlled Substances Act, enacted under Title II of the Comprehensive Drug Abuse Prevention
and Control Act of 1970, Pub. L. 91-513 (Oct. 27, 1970) ........................................................ `6

Agriculture Improvement Act of 2018, 115 Pub. L. 334 ..................................................... 11, 14

Anti-Drug Abuse Act of 1986, Pub. L. 99-570 (Oct. 27, 1986)................................................. 4, 5

Section 2401(d) of Title XXIV of the Crime Control Act of 1990,
Pub. L. 101-647 (Nov. 29, 1990) ...................................................................................... 5

Authorize, *Black's Law Dictionary*, 6th Ed. 1990 ...................................................................... 14

Authorized, *Merriam-Webster Dictionary*,
https://www.merriam-webster.com/dictionary/authorized....................................................... 14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
ETEROS TECHNOLOGIES USA, INC.          :
                                       :
                     Plaintiff,        :
                                       :        Court No. 21-00287
              v.                       :
                                       :
UNITED STATES,                         :
                                       :
                     Defendant.        :
_____:

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, the United States, submits this memorandum in support of its motion for judgment on the pleadings pursuant to USCIT Rule 12(c) and in opposition to plaintiff's motion for judgment on the pleadings.

### INTRODUCTION

This case involves drug paraphernalia that plaintiff Eteros Technologies USA, Inc. (Eteros) seeks to import into the United States. Drug paraphernalia is prohibited from entering the United States under 21 U.S.C. § 863(a). Where drug paraphernalia is introduced or attempted to be introduced into the United States contrary to the prohibition in 21 U.S.C. § 863(a), U.S. Customs and Border Protection (CBP) may seize it, or exclude it from entry, because the prohibition is imposed by a law relating to health and safety, and the importation of drug paraphernalia is not in compliance with the prohibition in 21 U.S.C. § 863(a)(3). *See* 21 U.S.C. § 863(a)(3); 19 U.S.C. § 1595a(c)(2)(A); and 19 C.F.R. § 151.16(j).

Despite these facts, Eteros argues that the limited exemption codified at 21 U.S.C. § 863(f)(1) permits it to import drug paraphernalia through a U.S. Port of Entry located in a State

where possession of such drug paraphernalia has been decriminalized under State law.  As we demonstrate below, Eteros's argument fails as a matter of law, and the Government is entitled to judgment on the pleadings.

## QUESTION PRESENTED

Whether U.S. Customs and Border Protection may exclude the subject merchandise, which Eteros stipulates is "drug paraphernalia" as defined by 21 U.S.C. § 863(d), from the customs territory of the United States pursuant to its authority under 19 U.S.C. § 1595a(c)(2) and 19 C.F.R. § 151.16(j).  Specifically, whether the exemption in 21 U.S.C. § 863(f)(1), for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items," is satisfied by a Washington law that merely provides that a person selling or delivering marijuana-related drug paraphernalia in that State is no longer committing a misdemeanor and cannot be charged with a civil infraction under Washington law.

## BACKGROUND

### A.  Administrative History of the Entry

This action covers one entry, Entry No. 551-5878880-8, of drug paraphernalia attempted to be entered through the port of Blaine, Washington and detained by CBP on April 10, 2021.  The drug paraphernalia at issue is described in the complaint as "certain motor frame assemblies which will be assembled and combined with other parts in the United States to create an ultimate end item known as the Mobius M108S Trimmer, an agricultural machine … designed to separate the leaf from the flower of cannabis or other plant material."  Compl. ¶¶ 7-8.  The Mobius M108S is described in the product's user guide as "the world's best cannabis and hemp trimmer" and as a "purpose-built machine for processing cannabis and hemp[.]"  Mobius M108S Manual (ECF no. 4-1 at 33 and 36).

On April 16, 2021, while the merchandise was detained, CBP issued a Request for Information (CBP Form 28) (Exhibit D to the protest) to Eteros, seeking information regarding, *inter alia*, the primary intended use of the ultimate end-item, the Mobius M108S.

Eteros responded to the Request for Information on April 19, 2021, that the Mobius M108S is "primarily intended to separate the leaf from the flower of cannabis plant material." *See* Protest Exhibit D (Letter from Aaron McKellar, CEO, to Brian Segaar, CBP Officer (April 19, 2021)).  In the same response, Eteros referenced the Agricultural Improvement Act of 2018, and discussed the legality of hemp.  *Id.*  As evidence concerning the primary end use of the Mobius M108S, Eteros referred CBP to videos and photos of the Mobius M108S being used to process cannabis at https://www.mobiustrimmer.com/mobius-m108s-trimmer/#m108s-videos. When asked to identify the intended end product, Eteros responded that "[t]here are two end products after processing plant material": the cannabis flower, with all leaf and stem material removed, and the leaf and stem material.  *Id.*  Eteros provided a user guide for the Mobius M108S and an "Industrial Hemp Handler Certificate" from the State of Nevada, which Eteros stated was to provide "meaningful demonstrations for potential customers."  *Id.*

On April 27, 2021, CBP issued a second Request for Information (Exhibit E to the protest), finding that the previous responses did not assist CBP in making its admissibility determination.  CBP sought answers as to whether the subject merchandise will "be used at any point, in any way, to manufacture, produce, or process a product" that has a THC concentration over 0.3 percent or that is identified under the Controlled Substances Act.

On April 29, 2021, Eteros responded that the machine is capable of use with marijuana, given how the machine functions, but that it is not the primary intended use in the United States. *See* Protest Exhibit E (Letter from Aaron McKellar, CEO, to Brian Segaar, CBP Officer

(April 29, 2021)).  Yet Eteros also claimed that it lacks access to end-user records to know the THC content of the cannabis products actually used with the machine.  *Id.*

On May 10, 2021, CBP excluded the merchandise from entry.

On May 12, 2021, Eteros filed Protest No. 3004-21-101275, contesting the exclusion of its drug paraphernalia in Entry No. 551-5878880-8.

On June 11, 2021, the protest was denied by operation of law, pursuant to 19 U.S.C. § 1499(c)(5)(B).

On that same day, June 11, 2021, Eteros timely filed the summons and complaint in this case to contest the denial of Protest No. 3004-21-101275.

Jurisdiction is proper pursuant to 28 U.S.C. § 1581(a).

### B.  Legal Framework Governing the Importation of Drug Paraphernalia

21 U.S.C. § 863(a) provides that, with respect to any item, equipment, product, or material of any kind that meets the definition of "drug paraphernalia" in 21 U.S.C. § 863(d), "[i]t is unlawful for any person — (1) to sell or offer for sale drug paraphernalia; (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or export drug paraphernalia."

Per subsection 863(f), however, "[t]his section shall not apply to — (1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or (2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory."

These statutory provisions date back to the Anti-Drug Abuse Act of 1986, Pub. L. 99-570 (Oct. 27, 1986), which included, in Title I (Anti-Drug Enforcement), the Mail Order Drug Paraphernalia Control Act (Subtitle O, Prohibition of the Interstate Sale and Transportation of

Drug Paraphernalia), codified in 21 U.S.C. § 857.  Although Section 2401(d) of Title XXIV of the Crime Control Act of 1990, Pub. L. 101-647 (Nov. 29, 1990) subsequently amended some of the statutory language in 21 U.S.C. § 857, and also transferred section 857 into The Controlled Substances Act, recodifying the provisions as 21 U.S.C. § 863, the relevant language for purposes of this case – *i.e.*, the prohibition in subsection (a)(3) that "[i]t is unlawful for any person … to import or export drug paraphernalia," and the exemption in subsection (f)(1) for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items" – dates back to the original § 857 as enacted under the Anti-Drug Abuse Act of 1986.

Prior to the enactment of 21 U.S.C. § 857 (including the relevant language that is currently in 21 U.S.C. § 863) in 1986, the regulation and enforcement of drug paraphernalia was for the most part left to the States.  In 1979, the White House commissioned the Drug Enforcement Administration to draft model State legislation – the Model Drug Paraphernalia Act – intended to be adopted by States to uniformly ban the manufacture, advertisement, sale, and possession of drug paraphernalia.[1]  But by 1986 it was clear that, although the Model Drug Paraphernalia Act had been enacted by a majority of the States,[2] the lack of an overarching Federal prohibition on the sale and transportation of drug paraphernalia continued to present a loophole that could not be addressed at the State level alone.  Thus, in introducing the Mail Order Drug Paraphernalia Control Act, which became 21 U.S.C. § 857 (and ultimately transferred to the current 21 U.S.C. § 863), House Representative Levine emphasized that "[it] is only through Federal legislation, such as this that we can close what had become a gaping loophole for the paraphernalia industry in the law," whereby paraphernalia dealers who could no

---

[1] USITC Publication, September 1989, Importation of Certain Drug Paraphernalia Into the United States, Report on the Committee on Finance, U.S. Senate, on Investigation No. 332-277 Under Section 332 of the Tariff Act of 1930, at 2.

[2] *See id.* (noting that by December 1987 the Model Act had been adopted by 38 States).

longer utilize intrastate commerce simply turned to interstate commerce.[3]  21 U.S.C. § 857 (now

21 U.S.C. § 863) filled this gap by providing for a uniformly applicable Federal prohibition

against the sale or offering for sale of drug paraphernalia, or using the mail or any other facility

of interstate commerce to transport drug paraphernalia, or importing or exporting drug

paraphernalia.

### C. CBP's Enforcement of the Prohibition Against Importation of Drug Paraphernalia in 21 U.S.C. § 863(a)(3)

As part of the Controlled Substances Act, enacted under Title II of the Comprehensive

Drug Abuse Prevention and Control Act of 1970, Pub. L. 91-513 (Oct. 27, 1970), as amended,

21 U.S.C. §§ 801 *et seq.*, 21 U.S.C. § 863 is a law relating to health and safety,[4] which prohibits,

*inter alia*, the introduction of drug paraphernalia into the United States by means of importation.

21 U.S.C. § 863(a)(3).

19 U.S.C. § 1595a(c)(2) provides (emphasis added) that "[m]erchandise which is

introduced or attempted to be introduced into the United States contrary to law shall be treated as

follows: … (2) [t]he merchandise *may* be seized and forfeited if — (A) its importation or entry is

---

[3]  *See* Hearing Before the Subcommittee on Crime of the Committee on the Judiciary House of Representatives, Ninety-Ninth Congress, Second Session on H.R. 1625 ("H.R. 1625 Hearing"), testimony of House Rep. Levine, who introduced H.R. 1625, known as the Mail Order Drug Paraphernalia Control Act.

[4]  *See* 21 U.S.C. § 801 ("The Congress makes the following findings and declarations: … (2) [t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people. … ."); *id.* at § 863 (prohibiting sale, use of mail or other facility of interstate commerce to transport, and importation and exportation of "drug paraphernalia … which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter").  In addition, the full title for Public Law 91-513 is "An Act to amend the Public Health Service Act and other laws to provide increased research, into, and prevention of, drug abuse and drug dependence; to provide for treatment and rehabilitation of drug abusers and drug dependent persons; and to strengthen existing law enforcement authority in the field of drug abuse."

subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute; … ."  But 19 U.S.C. § 1595a(c)(5)(B) also provides that "[i]n any case where the seizure and forfeiture of merchandise are required or authorized by this section, the Secretary may — … (B) permit the exportation of the merchandise, unless its release would adversely affect health, safety, or conservation or be in contravention of a bilateral or multilateral agreement or treaty."  Thus, where release of the merchandise for re-exportation would not adversely affect health, safety, or conservation, or be in contravention of a bilateral or multilateral agreement or treaty, CBP may exclude the merchandise from entry instead of seizing it.  The implementing regulation further clarifies that "[i]n lieu of seizure and forfeiture, where authorized by law, Customs may deny entry and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation."  19 C.F.R. § 151.16(j).

Where, as here, the subject merchandise consists of goods primarily intended or designed for use with a controlled substance, the possession of which is unlawful under Subchapter I of Title 21 of the U.S. Code – *i.e.*, where the subject merchandise is drug paraphernalia under 21 U.S.C. § 863(d) – 19 U.S.C. § 1595a(c)(2)(A) applies, such that seizure is authorized but not required, because 21 U.S.C. § 863 is a law relating to health and safety, which prohibits the importation of this merchandise.  However, in accordance with 19 U.S.C. § 1595a(c)(5)(B) and 19 C.F.R. § 151.16(j), in lieu of seizing and forfeiting the merchandise CBP may choose to exclude it from entry into the United States and permit its exportation.  The merchandise at issue is primarily designed or intended to be used with a controlled substance and is therefore drug paraphernalia under 21 U.S.C. § 863(d), as Eteros stipulates.  Consequently, the importation is prohibited by a law relating to health and safety.  At the same time, the exclusion and release of

this merchandise for exportation would not adversely affect health, safety, or conservation or be in contravention of a bilateral or multilateral agreement or treaty, and consequently its exclusion from entry in lieu of seizure and forfeiture is permitted under 19 U.S.C. § 1595a(c)(5)(B) and 19 C.F.R. § 151.16(j). More specifically, the prohibition is imposed by a law relating to "the health and general welfare of the American people," and Congress has determined such merchandise to be adverse to the health of the American people when primarily designed or intended for use with a controlled substance in the United States. *See* 21 U.S.C. §§ 801, 863. Accordingly, if the merchandise is excluded and permitted to be exported, then the merchandise cannot be used with a controlled substance in the United States. Because it is not inherently dangerous to Americans if not used with a controlled substance in the United States, exclusion of the subject merchandise from entry in lieu of seizure and forfeiture is authorized under 19 U.S.C. §§ 1595a(c)(2)(A) and 1595a(c)(5)(B), and 19 C.F.R. § 151.16(j).

In sum, the importation of drug paraphernalia is prohibited by a law relating to the health and safety of the American people, and where drug paraphernalia is attempted to be introduced into the United States contrary to this prohibition, CBP may seize the prohibited merchandise or, in lieu of seizure, may "deny entry and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation." 19 C.F.R. § 151.16(j).

## SUMMARY OF THE ARGUMENT

By law, the importation of drug paraphernalia into the United States is prohibited under 21 U.S.C. § 863(a)(3), and U.S. Customs and Border Protection may exclude from the customs territory of the United States any drug paraphernalia that is attempted to be introduced into the United States contrary to this prohibition, so long as the release of such merchandise for exportation would not adversely affect American health, safety, or conservation or be in

8

contravention of a bilateral or multilateral agreement or treaty.  *See* 19 U.S.C. §§ 1595a(c)(2) and 1595a(c)(5); 19 C.F.R. § 151.16(j).

Eteros contends that the exemption codified at 21 U.S.C. § 863(f)(1), which states that "[t]his section shall not apply to . . . any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items," permits it to import drug paraphernalia through a U.S. Port of Entry located in a State where State law has merely provided that a person selling and delivering marijuana-related drug paraphernalia in that State will no longer be guilty of a misdemeanor or charged with a civil infraction under that State's laws.  Eteros's arguments are illogical and unsupported.  Because Eteros fails to point to any local, State, or Federal law that *specifically authorizes Eteros* to manufacture, possess, or distribute the subject drug paraphernalia, its claims fail as a matter of law, and judgment should be entered for the United States.

## **ARGUMENT**

### I.    **STANDARD OF REVIEW**

A USCIT Rule 12(c) motion for judgment on the pleadings "'is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'"  *United States v. Inn Foods, Inc*., 264 F. Supp. 2d 1333, 1334 (Ct. Int'l Trade 2003) (citations omitted).  A motion for judgment on the pleadings may be granted if the moving party is entitled to judgment as a matter of law.  *Id*. (citing *N.Z. Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994)).  *See e.g.*, *FYH Bearings Units USA v. United States*, 753 F. Supp. 2d 1348, 1354 (Ct. Int'l Trade 2011).

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under USCIT Rule 12(b) for failure to state a claim.  *Id*.  In deciding a motion to

dismiss for failure to state a claim, as well as a USCIT Rule 12(c) motion for judgment on the

pleadings, the Court must accept all well-pleaded facts as true and view them in the light most

favorable to the non-moving party.  *Id*. at 1335 (citation omitted).  The Court can consider facts

that are contained in "materials of which the court may take judicial notice."  *See Heliotrope*

*Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (quoting *Barron v. Reich*,

13 F.3d 1370, 1377 (9th Cir. 1977)).

The burden of proof is on Eteros to show that it is authorized within the meaning of the

exemption.  21 U.S.C. § 885(a)(1), applicable to all statutory exemptions in Subchapter I of the

Controlled Substances Act, states that:

> It shall not be necessary for the United States to negative any
> exemption or exception set forth in this subchapter in any
> complaint, information, indictment, or other pleading or in any
> trial, hearing, or other proceeding under this subchapter, and the
> burden of going forward with the evidence with respect to any
> such exemption or exception shall be upon the person claiming its
> benefit.

Since the Mail Order Drug Paraphernalia Control Act is now a part of the Controlled Substances

Act, 21 U.S.C. § 863(f) qualifies as an exemption "set forth in this subchapter."  21 U.S.C.

§ 885(a)(1) is therefore applicable.  Accordingly, it is Eteros's burden to put forth evidence

showing that it is authorized within the meaning of the exemption.  *U.S. v. Main Street*

*Distributing Inc.*, 700 F. Supp. 655, 669 (EDNY 1988).

## II.   ETEROS'S MERCHANDISE IS DRUG PARAPHERNALIA

The subject merchandise is drug paraphernalia under 21 U.S.C. § 863(d).  The term "drug

paraphernalia" is defined as "any equipment, product, or material of any kind which is primarily

intended or designed for use in manufacturing, compounding, converting, concealing, producing,

processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human

body a controlled substance,[5] possession of which is unlawful under this subchapter."

21 U.S.C. § 863(d).  The term "includes items primarily intended or designed for use in

ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP,

methamphetamine, or amphetamines into the human body[.]"  *Id.* (non-exhaustive listing of

examples omitted).  The statute provides the following factors to consider, among other

"logically relevant" ones, in determining whether an item constitutes drug paraphernalia:

(1)  instructions, oral or written, provided with the item concerning its use;

(2)  descriptive materials accompanying the item which explain or depict its use;

(3)  national and local advertising concerning its use;

(4)  the manner in which the item is displayed for sale;

(5)  whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6)  direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7)  the existence and scope of legitimate uses of the item in the community; and

(8)  expert testimony concerning its use.

*Id.* § 863(e); *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 522 n.11 (1994)

(noting that, "[a]mong the factors that are relevant to whether an item constitutes drug

---

5 The term "controlled substance" means "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  21 U.S.C. § 802(6).  Marijuana, sometimes spelled "marihuana," is defined as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," *see id.* § 802(16), and is listed as a Schedule I drug.  *See id.* § 812(c), Schedule I(C)(10).  However, in accordance with the Agriculture Improvement Act of 2018, 115 Pub. L. 334, "[t]he term 'marihuana' does not include … hemp, as defined in section 1639o of title 7."  21 U.S.C. § 802(16)(B)(i); *see* 7 U.S.C. § 1639o (defining "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis.").

paraphernalia are 'instructions, oral or written, provided with the item concerning its use,' . . . and 'the manner in which the item is displayed for sale'") (citations omitted).

The Supreme Court has identified two categories of drug paraphernalia: "items 'primarily intended . . . for use' with controlled substances and items 'designed for use' with such substances." *Posters 'N' Things*, 511 U.S. at 518.  The term "primarily intended . . . for use . . . is to be understood objectively and refers to a product's likely use." *Id.* at 521; *see also id.* at 521 n.11 ("[I]t is the likely use of customers generally, not any particular customer, that can render a multiple-use item drug paraphernalia.").  Therefore, items having possible multiple uses may constitute drug paraphernalia for purposes of section 863 if the likely use by customers of the items is for use with controlled substances.  Similarly, an item is "designed for use" if it "is principally used with illegal drugs by virtue of its objective features, *i.e.*, features designed by the manufacturer." *Id.* at 518 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 500 (1982)).  "Items that meet the 'designed for use' standard constitute drug paraphernalia irrespective of the knowledge or intent of one who sells or transports them." *Id.* (finding that "the 'designed for use' element of § [863(d)] does not establish a scienter requirement with respect to sellers[.]").  Finally, the statute provides examples of drug paraphernalia, including certain pipes, tubes, masks, and other devices. *Id.* § 863(d)(1)–(15).

Despite the fact that in its administrative protest, Eteros claimed that the Mobius 108S is not "primarily intended or designed for use" in processing or preparing marijuana, Protest Mem. at 8 (ECF no. 4-1 at 11), in its motion for judgment on the pleadings, Eteros now concedes that the merchandise is drug paraphernalia as defined in 21 U.S.C. § 863(d).  Specifically, Eteros stipulates to the following relevant facts:

- Eteros is "engaged in the importation, manufacture, and distribution of agricultural machinery for the cannabis (hemp and marijuana) processing industry."  Pl's Mem. at 2.

- The subject merchandise is "designed to separate the leaf from the flower of cannabis or other plant material."  *Id.* at 3.

- The subject merchandise "meets the federal statutory definition of 'drug paraphernalia,'" under 21 U.S.C. § 863(d).  *Id.* at 1.

Therefore, the subject excluded merchandise is drug paraphernalia as defined in 21 U.S.C. § 863(d).

## III.    DRUG PARAPHERNALIA MAY NOT BE IMPORTED

Because the subject merchandise is drug paraphernalia as defined in 21 U.S.C. § 863(d), it is unlawful for Eteros to import such merchandise.  21 U.S.C. § 863(a)(3).  Eteros contends, however, that it is entitled to an exemption from the prohibition to import drug paraphernalia under subsection 863(f)(1) as a "person authorized by local, State, or Federal law to manufacture, possess, or distribute such items."  As explained below, Eteros cannot meet the statutory standard for an exemption because Washington state law does not authorize Eteros to manufacture, possess, or distribute drug paraphernalia.

Eteros argues that Washington state law – specifically, the Revised Code of Washington (RCW) 69.50.412, included under Part III, Section 22, of Washington I-502, which was passed in November, 2012, to overhaul Washington's state marijuana laws – exempts it from the prohibition against the importation of drug paraphernalia found in 21 U.S.C. § 863(a)(3).  Pl. Mem. at 28-29; Compl. ¶¶ 30-31.  Eteros is wrong.

The exemption in 21 U.S.C. § 863(f)(1) provides that "[t]his section shall not apply to … any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items."  Eteros stipulates that its merchandise is "drug paraphernalia" under 21 U.S.C. § 863(d) because it "designed to separate the leaf from the flower of cannabis or other plant material," and accordingly its importation is prohibited under subsection 863(a)(3).  Pl. Mem. at 1 & 3.  Eteros

is not exempt from this prohibition by virtue of RCW 69.50.412, nor by virtue of any local, State, or Federal law.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Had Congress intended to permit the importation of drug paraphernalia simply where a state or locality has decriminalized the manufacture, use, or possession of such items, it would have said so.[6] Instead, Congress explicitly requires that persons be specifically *authorized* by Federal, state or local law.

In construing the language of a statute, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 117 S. Ct. 843, 846, 519 U.S. 337, 340 (1997).  The common definition of the word "authorized" is "endowed with authority." *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/authorized.  Black's Law Dictionary defines "authorize" as "[t]o empower, to give a right or authority to act." *Black's Law Dictionary*, 6th Ed. 1990.  Eteros' argument that it is "authorized" by a Washington state law that merely removes the threat of prosecution under state law for the sale, delivery, manufacture,

---

[6]  Contrast the treatment of hemp when Congress permitted individual states to obtain control of their production and distribution in the Agriculture Improvement Act of 2018, 115 P.L. 334 (2018 Farm Bill).  In permitting individual states to control the production and distribution of hemp, Congress required the U.S. Department of Agriculture to develop a thorough approval plan and compliance program, which includes requiring states to develop procedures for annually inspecting hemp production operations, as well as developing procedures to reliably test for THC concentration levels, thereby ensuring that companies are not producing or distributing marijuana.  *See* 7 U.S.C. § 1639q, 7 C.F.R. § 990.3(a)(3), 7 C.F.R. § 990.3(a)(7).  Moreover, Congress explicitly ensured that hemp was treated consistently among the states.  *See* 2018 Farm Bill at § 10114 ("Interstate Commerce").

or possession with intent to sell or deliver marijuana-related drug paraphernalia is contrary to both the plain language of section 863 and the basic cannon of statutory construction holding that the court should "'give effect, if possible, to every clause and word of a statute' and should avoid rendering any of the statutory text meaningless or as mere surplusage." *Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Specifically, Washington state law RCW 69.50.412 provides, in pertinent part (emphasis added):

> (1) Every person who sells or gives, or permits to be sold or given to any person any drug paraphernalia in any form commits a class I civil infraction under chapter 7.80 RCW. For purposes of this subsection, "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance *other than marijuana*.

> (2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance *other than marijuana*. Any person who violates this subsection is guilty of a misdemeanor.

Thus, Washington state law merely *decriminalizes* the selling and delivery (or the possession or manufacture with intent to sell or deliver) of marijuana-related drug paraphernalia under state law, such that a person selling and delivering marijuana-related drug paraphernalia in the state of Washington would not be guilty of a misdemeanor or charged with a class I civil infraction under chapter 7.80 RCW of the state's laws.

Even Eteros acknowledges that it "distributes its merchandise to State-licensed harvesters of legal marijuana whose use of the merchandise is subject to stringent State authorization and

licensing systems," Pl. Mem. at 2, but does not claim that it holds any "State authorization" or license that authorizes it to possess the subject drug paraphernalia in Washington.  The most that can be said for the Washington law is that it may insulate Eteros and its principals from prosecution by the State of Washington.  However, because Washington law does not specifically authorize Eteros to manufacture, possess, or distribute the subject drug paraphernalia, Eteros and its principals may still face criminal liability under section 863.

The Controlled Substances Act itself distinguishes between decriminalization and authorization.  In the proscription on simple possession, for instance, whether possession of a controlled substance constitutes a crime depends on whether it is properly authorized: "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise *authorized* by this subchapter or subchapter II."  21 U.S.C. § 844(a) (emphasis added).

Moreover, Eteros's interpretation is contrary to the overarching statutory purpose and structure of 21 U.S.C. § 863.  It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *see also United Sav. Ass'n of Tex. v. Timbers of Inland Forest Assoc.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor.").  "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. at 133 (internal citations and quotations omitted).

Here, as discussed above, the overarching purpose of the federal statute was to create a uniformly applicable Federal prohibition against the sale or offering for sale of drug paraphernalia, or using the mail or any other facility of interstate commerce to transport drug paraphernalia, or importing or exporting drug paraphernalia. *See* H.R. 1625 Hearing, *supra* note 3; 21 U.S.C. § 863(a)(3). The law sought to close "a gaping loophole" whereby the prohibition of drug paraphernalia in one state was easily overcome by the lack of such prohibition in other states. The prohibition on importing and exporting is part of the broader overarching prohibitions in subsection 863(a) intended precisely to impose federal uniformity. Eteros's broad interpretation of subsection 863(f)(1) would exempt from this federal prohibition all persons who import through a U.S. Port of Entry that is located in a State that has merely decriminalized the manufacture, possession, or distribution of drug paraphernalia under State law. Such a reading of the statute essentially recreates the very loophole that Congress intended to close and runs contrary to Congress's intent to create national uniformity with regard to drug paraphernalia. Accordingly, Congress could not have intended for subsection 863(f)(1) to permit a wholesale exemption for the importation of drug paraphernalia through a U.S Port of Entry located in Washington state on the basis of a law such as RCW 69.50.412.

The exemption at issue here directs that "[t]his section shall not apply to . . . *any person* authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(f)(1) (emphasis added). By contrast, the second subsection exempts "*any item . . . traditionally intended for use with tobacco products.*" 21 U.S.C. § 863(f)(2) (emphasis added). Following the plain meaning of the text, subsection 863(f)(2) exempts an entire category of

*items*, while subsection 863(f)(1), implicated here, applies to a *person*.[7]  Therefore, the plain

language of the exemptions distinguishes between "any person" and "any items."

Eteros acknowledges that the exemption found at subsection 863(f)(1) applies to persons,

and argues at length that it is a corporate "person" for purposes for section 863.  Pl. Mem. at 25-

27.  The Government does not dispute that Eteros is a corporate "person" for purposes for

section 863.  At no point, however, does any Washington law affirmatively authorize Eteros to

manufacture, possess, or distribute drug paraphernalia.  Eteros's argument to the contrary states

as a *fait accompli* that it is authorized by Washington law, but fails to cite any statute, case, or

even regulation that might show that it possesses such authorization.  RCW 69.50.412 does not

specifically authorize or exempt any person, let alone Eteros specifically, from the federal

prohibition on importation of drug paraphernalia.[8]

In sum, Congress did not and could not have intended in 21 U.S.C. § 863(f)(1) to permit

a State law to provide blanket authorization to import drug paraphernalia through U.S. Ports of

Entry located in a State that has chosen not to prosecute the manufacture, possession or

distribution of drug paraphernalia under that State's own criminal or civil laws.  Such an

---

[7]  *See United States v. Assorted Drug Paraphernalia Valued at $29,627.07, and Jason Fernandez*, Civ. No. 18-143-GJF/SMV (DNM 2018) (2018 WL 6630524) ("Congress intended to shield from prosecution those persons who were 'authorized by [law] to manufacture, possess, or distribute [drug paraphernalia],' but did not intend to also shield the drug paraphernalia itself from lawful forfeiture.  That balance was within Congress's purview to strike.").

[8]  It is unclear what Eteros believes is the precise scope of the "authorization" that Washington state law, RCW 69.50.412, provides.  For example, it is not clear whether Eteros argues that the decriminalization of marijuana-related drug paraphernalia in Washington provides authority only for all Washington residents to import merchandise that would be otherwise inadmissible, or whether Eteros believes that RCW 69.50.412 represents carte blanche authorization to all importers importing through ports in Washington state.  Either interpretation is inconsistent with the plain language of subsection 863(f)(1), and would raise a number of legal and operational concerns for Customs.  Because Eteros is not authorized to import drug paraphernalia under the plain language of the statute, this brief does not exhaustively identify the full range of potential impacts of such interpretations.

interpretation would impermissibly frustrate the purpose of the statute, and would impermissibly impair and frustrate the achievement of federal uniformity in an area where federal uniformity is essential.

## **CONCLUSION**

For these reasons, we respectfully request that the Court enter judgment for the United States and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

November 5, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
ETEROS TECHNOLOGIES USA, INC.          :
                                        :
                         Plaintiff,     :
                                        :        Court No. 21-00287
                    v.                  :
                                        :
UNITED STATES,                          :
                                        :
                         Defendant.     :
_____:

## CERTIFICATE OF COMPLIANCE

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division,

Commercial Litigation Branch, International Trade Field Office, who is responsible for the

Government's memorandum, dated November 5, 2021, relying upon the word count feature of

the word processing program used to prepare the memorandum, certify that this memorandum

complies with the word count limitation under the Court's chambers procedures, and contains

6,022 words.

/s/ Guy Eddon