UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

——————————————————————————
ETEROS TECHNOLOGIES USA, INC.          :
                                       :
                    Plaintiff,         :
                                       :       Court No. 21-00287
            v.                         :
                                       :
UNITED STATES,                         :
                                       :
                    Defendant.         :
——————————————————————————:

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................... 2

ARGUMENT .................................................................................................................. 3

I.     Legalization of Marijuana and Its Paraphernalia Does Not "Authorize" A "Person" Under The Plain Terms Of The Statutory Exemption In Subsection 863(f)(1) ................. 3

     A.  The Exemption Requires A Narrow Construction And A Plain Reading Of Its Terms ................................................................................................................ 4

     B.  Eteros Fails To Meet The "Person Authorized" Requirement ..................................... 9

II.    Eteros Incorrectly Relies On The *Murphy* Case, 21 U.S.C. § 903, And The Anticommandeering Doctrine .............................................................................. 12

     A.  *Murphy* Is Inapposite ...................................................................................... 12

     B.  Section 903 Is Not Implicated ........................................................................... 14

     C.  There Is No Violation of the Anticommandeering Principle of the Tenth Amendment ....................................................................................................... 16

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. U.S.*,
Crim. No. L-00-033, 2009 WL 3878282 (D. Md. Nov. 16, 2009) .............................................. 8

*Board of Trustees of University of Illinois v. U.S.*,
289 U.S. 48 (1933)................................................................................................................. 15

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992)................................................................................................................ 6

*Corley v. United States*,
556 U.S. 303 (2009)................................................................................................................ 6

*Department of Air Force v. Rose*,
425 U.S. 352 (1976)................................................................................................................ 6

*Department of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001).................................................................................................................... 6

*In re Ultra Trimmer, L.L.C.*,
No. 86479070, 2016 WL 7385764, (T.T.A.B. Nov. 29, 2016) ........................................... 7, 8

*Milner v Department of Navy*,
562 U.S. 562 (2011)................................................................................................................ 6

*Murphy v. National Collegiate Athletic Association (NCAA)*,
138 S. Ct. 1461 (2018)....................................................................................................*passim*

*Nardone v. United States*,
302 U.S. 379 (1937)................................................................................................................ 7

New York v. United States,
505 U.S. 144 (1992)........................................................................................................ 16, 18

*United States v. Assorted Drug Paraphernalia Valued at $29,627.07, and
Jason Fernandez*,
Civ. No. 18-143-GJF/SMV (D.N.M. 2018) (2018 WL 6630524)........................................ 7, 8

*Washington County v. Gunther*,
452 U.S. 161 (1981)................................................................................................................ 6

**Statutes**

5 U.S.C. § 552, Freedom of Information Act ................................................................ 6

19 U.S.C. § 1595a(c)(2)(A) ............................................................................................ 1

21 U.S.C. § 863 ....................................................................... 4, 5, 6, 8, 17, 18

21 U.S.C. § 863(a) ....................................................................... 1, 8, 15, 17

21 U.S.C. § 863(a)(3) ................................................................... 1, 7, 13, 16

21 U.S.C. § 863(d) ............................................................................................ 1

21 U.S.C. § 863(f) ............................................................................................ 5

21 U.S.C. § 863(f)(1) ............................................................................... *passim*

21 U.S.C. § 863(f)(2) ................................................................................. 4, 7

21 U.S.C. § 903 ....................................................................... 3, 12, 14, 15

21 U.S.C. § 3701 ............................................................................................ 13

28 U.S.C. § 3701 ............................................................................................ 12

28 U.S.C. § 3702 ............................................................................................ 13

47 U.S.C. § 605(a) .......................................................................................... 7

Revised Code of Washington (RCW) 69.50.357 ....................................... 10

Revised Code of Washington (RCW) 69.50.412 ....................... 2, 3, 9, 15

Washington Administrative Code § 314-55-079 ................................... 3, 10

Washington Administrative Code § 314-55-080 ......................................... 10

**Rules**

USCIT Rule 12(c) ............................................................................................ 1

**Regulations**

19 C.F.R. § 151.16(j) .................................................................................... 1

**Other Authorities**

U.S. Const. Amend X ........................................................................... 3, 12, 16, 17, 18

Professional and Amateur Sports Protection Act of 1992,
Pub. L. 102-559 (October 28, 1992) ........................................................ 12, 13, 14, 17

Controlled Substances Act, enacted under Title II of the Comprehensive Drug Abuse
Prevention and Control Act of 190, Pub. L. 91-513 (October 27, 1970).................................. 6, 8

Authorization Continuum: Investigating The Meaning Of "Authorization"
Through The Lens Of The Controlled Substances Act,
72 Vand. L. Rev. 1335 ........................................................................... 9

*Black's Law Dictionary*, 6th Ed. 1990 .............................................................. 5, 6, 14

*Legal Information Institute, Cornell U Law School*,
https://www.law.cornell.edu/wex/exemption ......................................................... 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC. | : |
| | : |
| Plaintiff, | : |
| | : Court No. 21-00287 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, the United States, respectfully submits this reply brief in further support of its cross-motion for judgment on the pleadings pursuant to USCIT Rule 12(c).

## INTRODUCTION

Plaintiff, Eteros Technologies USA, Inc. (Eteros), attempted to import certain drug paraphernalia into the United States, which was excluded by U.S. Customs and Border Protection (CBP) at the Port of Blaine, Washington.[1]  Because Eteros stipulated that its merchandise is "drug paraphernalia" as defined in 21 U.S.C. § 863(d), the only issue before the Court is whether Eteros meets the express statutory requirements of the limited exemption for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items" under 21 U.S.C. § 863(f)(1) that would allow it to import the drug paraphernalia otherwise prohibited by 21 U.S.C. § 863(a)(3).  Eteros has not shown that it possesses a specific

---

[1]  Where drug paraphernalia is introduced or attempted to be introduced into the United States contrary to the prohibition in 21 U.S.C. § 863(a), CBP may seize it, or exclude it from entry, because the prohibition is imposed by a law relating to health and safety, and the importation of drug paraphernalia is not in compliance with the prohibition in 21 U.S.C. § 863(a)(3).  *See* 21 U.S.C. § 863(a)(3); 19 U.S.C. § 1595a(c)(2)(A); and 19 C.F.R. § 151.16(j).

authorization that satisfies the statutory exemption but, rather, it relies solely on Washington state law that generally decriminalizes (or, to use Eteros's preferred word, legalizes) the possession, delivery, or manufacture of marijuana and marijuana-related paraphernalia.[2]

For the reasons explained in our cross-motion for judgment on the pleadings and further elucidated below, Eteros's argument fails as a matter of law, and the Government is entitled to judgment.

## SUMMARY OF THE ARGUMENT

In response to the Government's cross-motion for judgment on the pleadings, Eteros argues that the exemption codified at 21 U.S.C. § 863(f)(1) permits it to import drug paraphernalia through a U.S. Port of Entry located in a state where possession, delivery, or manufacture of marijuana-related drug paraphernalia has been legalized under state law. This Federal statute exempts specifically authorized persons from the otherwise criminal prohibition against the importation of drug paraphernalia and should therefore be narrowly construed. The Court should give meaning to all of the terms of the Federal statutory exemption, and a state's legalization of marijuana-related drug paraphernalia does not satisfy the specific personal authorization for the possession, manufacture or distribution of such items, that is required by the plain meaning of the statutory terms of that exemption.

---

[2] Eteros relies on the Revised Code of Washington (RCW) 69.50.412, which provides:

> It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, or prepare a controlled substance other than marijuana. Any person who violates this subsection is guilty of a misdemeanor.

Eteros relies on the Revised Code of Washington (RCW) 69.50.412, but the state of Washington has also established the Washington State Liquor and Cannabis Board, which administers the state's "marijuana retailer license," including as it relates to marijuana-related drug paraphernalia.  Wash. Admin. Code § 314-55-079.  Eteros does not claim to hold any such license from the Washington State Liquor and Cannabis Board, let alone any license that is specific both to the "person" (*i.e.*, Eteros) and to "such items" (*i.e.*, the subject drug paraphernalia at issue).  Nor does Eteros allege that it has any other license or permit authorizing it specifically to "manufacture" or "distribute" (as defined in 21 U.S.C. § 802) the specific drug paraphernalia at issue.

Eteros's other contentions, that the authorization required by the statute somehow conflicts with *Murphy v. National Collegiate Athletic Association (NCAA)*, 138 S. Ct. 1461 (2018), 21 U.S.C. § 903, or the anticommandeering doctrine of the Tenth Amendment, are untenable.  The exemption at issue here is an independent Federal law that does not encroach on or limit a state's power.  Instead, the exemption provides an *opportunity* for states to affirmatively authorize specific persons with respect to certain drug paraphernalia should a state so choose.

## ARGUMENT

I.  **Legalization Of Marijuana and Its Paraphernalia Does Not "Authorize" A "Person" Under The Plain Terms Of The Statutory Exemption In Subsection 863(f)(1)**

Eteros argues that Washington state legalized, over and above merely decriminalizing, the possession of marijuana and marijuana-related paraphernalia, and that its normatively expansive view of a maximally broad scope of "legalization" is sufficient to satisfy the Federal exemption codified at 21 U.S.C. § 863(f)(1).  Pl. Resp. Br. at 3-15. (ECF no. 20).  But Eteros misapprehends our argument when it says that the "Government contends that Washington State

has only *decriminalized* marijuana and marijuana 'drug paraphernalia,' but has not *legalized*

same[.]"  Pl. Resp. Br. at 3 (emphasis in original), citing Def.'s Br. at 14.  We do not contend

that Washington state has "not legalized" marijuana or marijuana-related drug paraphernalia but,

rather, that legalization of marijuana-related drug paraphernalia is insufficient to meet the

claimed exemption under Federal statute.

### A.  The Exemption Requires A Narrow Construction And A Plain Reading Of Its Terms

The relevant statutory provisions provide as follows:

Pursuant to 21 U.S.C. § 863(a), it is unlawful for any person:

> (1)　　to sell or offer for sale drug paraphernalia;
> (2)　　to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or
> (3)　　to import or export drug paraphernalia.

Section 863 allows for a limited exemption in subsection (f), which states:

> This section shall not apply to—
>
> (1)　　any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or
> (2)　　any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

Subsection 863(a) defines the unlawful conduct, while subsection (f) provides for limited

exemptions.  Specifically, subsection (f)(1) covers "any person authorized," and subsection (f)(2)

separately covers "any item … traditionally intended for use with tobacco products," thus

distinguishing between a *person* and an *item*.[3]

---

[3]  Eteros stipulates that it does not rely on the exemption in subsection (f)(2).  *See* Joint Proposed Scheduling Order at 2 (ECF no. 12).

The plain language of the Federal statute at issue explicitly states that it is unlawful for any person to sell or offer for sale drug paraphernalia; to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or to import or export drug paraphernalia, and the limited exemption that then permits this otherwise unlawful activity by "any person authorized" by state law, must be strictly construed.  The Court, accordingly, should construe this statutory exemption narrowly.

An exemption "is an immunity, exception or freedom from the liability, duty, or other requirements, such as exemptions from taxation or execution for certain property, or exemptions from military conscription."  *Legal Information Institute, Cornell U Law School*, *available at*, https://www.law.cornell.edu/wex/exemption (last visited Jan. 30, 2022); *see also Black's Law Dictionary*, 6th Ed. 1990 (defining exemption as "freedom from a general duty or service; immunity from a general burden, tax, or charge.").  The exemption in the Federal statute at issue here provides immunity and the freedom from liability of the Federal law that bans the sale, interstate transportation, and importation or exportation of drug paraphernalia.

In providing this exemption, Congress allowed any state the opportunity to affirmatively authorize a person to manufacture, possess, or distribute drug paraphernalia, if it so chooses.  A state's role in granting authorization under this exemption must be unambiguous, express, and, again, affirmative, because the state is actively granting that authorized person a unique privilege to engage in otherwise federally prohibited activity.

Further, the statutory exemptions found in section 863 should be construed narrowly because the Federal statute's overall purpose is to make trafficking in drug paraphernalia unlawful in the United States, prohibiting interstate commerce in such items that otherwise could not have been banned by the states.  When viewed against the backdrop of a Federal prohibition

on marijuana as a Schedule I controlled substance, strict construction of the exemption at subsection 863(f)(1) is revealed as imperative. The limited exemptions at subsection 863(f) are to be read in the context of the general prohibition on drug paraphernalia, and the wider prohibitions set forth in the Controlled Substances Act of which section 863 is now part.

The Supreme Court has held that statutory exemptions "must be narrowly construed" in the Freedom of Information Act (FOIA) context. *Milner v Department of Navy*, 562 U.S. 562, 564 (2011) (internal quotations omitted). The Court noted that "[t]he statute's purpose reinforces this understanding of the exemption," and explained that because of the "Act's goal of broad disclosure … the exemptions must be given a narrow compass." *Id.*, 562 U.S. at 571 (internal quotation omitted); *see also Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)) ("[D]isclosure, not secrecy, is the dominant objective of the Act[.]" (quoting *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Here, section 863's dominant objective is to prohibit the sale, interstate transportation, and distribution of drug paraphernalia, including through importation, and, therefore, its exemptions should be narrowly construed to give effect to the statute's overarching purpose.

Moreover, Congress is presumed to say what it means and mean what it says, and every statutory term must be given meaning. *See, e.g., Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). It is a cardinal rule of statutory construction that the court should give effect to all provisions and terms of a statute. *Corley v. United States*, 556 U.S. 303, 314 (2009).

To authorize is "[t]o empower, to give a right or authority to act… To permit a thing to be done in the future." *Black's Law Dictionary*, 6th Ed. 1990. The word "authorize … ordinarily denotes affirmative enabling action." *Washington County v. Gunther*, 452 U.S. 161, 169 (1981). For example, in interpreting the statutory term "person … authorized" in Section

605 of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), the Supreme

Court held that the terms of the statute must be given their plain meaning.  *Nardone v. United

States*, 302 U.S. 379, 382 (1937) ("[T]he plain words of section 605 forbid anyone, unless

authorized by the sender, to intercept a telephone message.").  In both the context of this case

and in *Nardone*, in order to give meaning and effect to the statutory term "person authorized" the

authorization to a person must be specific, affirmative, and explicit.  A general state law

repealing a prior ban on eavesdropping in that state would not satisfy the person-specific

authorization required to intercept a telephone message under *Nardone*, and, similarly, a state's

repeal of a prior ban on marijuana-related drug paraphernalia does not satisfy the person-specific

authorization required for the exemption from the Federal criminal prohibition on the

importation of drug paraphernalia.

     The only Federal case of which we are aware that specifically discusses the scope of the

exemption found at subsection 863(f)(1) is *United States v. Assorted Drug Paraphernalia Valued

at $29,627.07, and Jason Fernandez*, Civ. No. 18-143-GJF/SMV (D.N.M. 2018) (2018

WL 6630524).  In that case, the district court noted the distinction between the two exemptions –

(f)(1) and (f)(2) –in the context of an *in rem* civil forfeiture action, and distinguished the two

exemptions as follows:

> Section 863(f)(1) exempts "any person" from prosecution, while
> § 863(f)(2) exempts "an item" from the definition of drug paraphernalia.
> This intentional choice of language leads the Court to conclude that
> Congress intended to shield from prosecution those persons who were
> "authorized by [law] to manufacture, possess, or distribute [drug
> paraphernalia]," but did not intend to also shield the drug paraphernalia
> itself from lawful forfeiture.  That balance was within Congress's purview
> to strike.

*Id.* at *8 (square brackets in the original).  Because of the distinction between "person" and

"item," it is imperative that any authorization in subsection (f)(1) be directed to a particular

person engaged in the specific conduct of manufacture, possession, or distribution of "such items" – *i.e.*, a specific person must be explicitly authorized to possess, manufacture, or distribute the drug paraphernalia at issue.

In *Anderson v United States*, the petitioner argued after his conviction for conspiracy to import drug paraphernalia in violation of 21 U.S.C. § 863(a)(3) that "his conduct falls within the [§ 863(f)(1)] exemption because he was licensed to engage in a retail business by the Baltimore City Zoning Board as well as the state of Maryland, and the United States Customs Service authorized him to import mannitol." *Anderson v. U.S.*, Crim. No. L-00-033, 2009 WL 3878282, at *3 (D. Md. Nov. 16, 2009). The district court denied the claim because the petitioner could "point to no local, state, or Federal laws authorizing him to possess or distribute drug paraphernalia. . . . Accordingly, there was no basis … to argue that Anderson's conduct fell within the [21 U.S.C. § 863] statute's exemption provision." *Id.*

Similarly, in *In re Ultra Trimmer*, a case involving a trademark application for goods that were drug paraphernalia, the Trademark Trial and Appeal Board found "no evidence in the record that Applicant has received a license or other manifestation of authorization from any local, State, or Federal governmental authority to manufacture, possess, or distribute drug paraphernalia that would otherwise be illegal under the [Controlled Substances Act], and that Applicant thus has not shown that its goods are exempted from illegality under § 863(f)(1) of the CSA." *In re Ultra Trimmer, L.L.C.*, No. 86479070, 2016 WL 7385764, at *5, (T.T.A.B. Nov. 29, 2016).

Thus, in *United States v. Assorted Drug Paraphernalia* the court noted that the (f)(1) exemption requires that a person be authorized, while in *Anderson* and *Ultra Trimmer* the courts found that the express terms of the (f)(1) exemption were not met due to the absence of

authorization.  This Court should similarly find that satisfaction of the term "person authorized" for purposes of the (f)(1) exemption must take the form of a deliberate affirmative approval for an individual or entity to manufacture, possess, or distribute such items as the drug paraphernalia at issue.  *See The Authorization Continuum: Investigating The Meaning Of "Authorization" Through The Lens Of The Controlled Substances Act*, 72 Vand. L. Rev. 1335, 1366 ("Affirmative authorization occurs when deliberate action is taken to formally approve conduct. This interpretation of authorization is uncontroversial, and some consider it the term's 'ordinary' meaning.").  Accordingly, the statutory exemption should be read to require affirmative personal authorization, in compliance with all of its terms.

### B.  Eteros Fails To Meet The "Person Authorized" Requirement

Eteros contends that Washington law, RCW 69.50.412, generally legalizing the possession, delivery, or manufacture of marijuana and marijuana-related drug paraphernalia, meets the express requirements of the statutory exemption.  Pl. Resp. Br. at 2.  In support, Eteros points to myriad disparate statements in court decisions, in newspaper articles, by legal scholars, by Washington State's Liquor and Cannabis Board, and by CBP, all acknowledging that Washington has legalized marijuana.  Pl. Resp. Br. at 4-6.  However, a state law that has generally legalized the possession of marijuana and marijuana-related drug paraphernalia in that state simply does not satisfy the express terms of the exemption at issue.  Had Congress intended to broadly permit the importation of drug paraphernalia into any state that has generally legalized the manufacture, use, or possession of such drug paraphernalia, it would have said so, and not required specific personal authorization.  As explained in our opening brief, RCW 69.50.412 does not *authorize* Eteros (or any other "person," be it corporate or human) to manufacture, possess, or distribute such drug paraphernalia where the state law merely removes, for everyone

9

over the age of twenty-one, the threat of penalty under state law for marijuana-related drug paraphernalia.

Even Eteros recognizes that with the legalization of marijuana and marijuana-related drug paraphernalia, a person must still comply with state laws and regulations that limit and define legal parameters (*e.g.*, possession limited to one ounce, to adults twenty-one years of age and older, *etc.*).  Pl. Resp. Br. at 4.  A state may impose additional, specific requirements or a licensing regime in order to regulate activities associated with marijuana and marijuana-related drug paraphernalia.  One indicium of state authorization to engage in certain conduct with respect to marijuana-related drug paraphernalia could take the form of a personal license or permit.

Washington established the Washington State Liquor and Cannabis Board and created a licensing system to oversee and regulate activities related to marijuana and marijuana-related drug paraphernalia.  As part of its licensing regime, Washington has a "marijuana retailer license" for the sale of marijuana-related drug paraphernalia, which "allows the licensee to sell only useable marijuana, marijuana concentrates, marijuana-infused products, *marijuana paraphernalia*, and lockable boxes to store marijuana at retail in licensed retail outlets to persons twenty-one years of age and older, except as allowed for persons under twenty-one years of age consistent with RCW 69.50.357 and WAC 314-55-080" (emphasis added).  Wash. Admin. Code § 314-55-079.  If legalization constituted the type of blanket authorization suggested by Eteros, then Washington would not have needed to create a licensing regime.

Eteros does not allege that it possesses a "marijuana retailer license" under Washington law that could "allow[] the licensee to sell … marijuana paraphernalia."  Nor does Eteros allege that it has any other license or permit authorizing it specifically to "manufacture" or "distribute"

(as defined in 21 U.S.C. § 802) the specific drug paraphernalia at issue.  In fact, the only license Eteros actually claims to possess is "a hemp processing license issued by the State of Nevada." Compl. at ¶ 3.

Eteros simply contends that "repeal of Washington State's former prohibition constitutes an 'authorization' of the newly legalized *class of products*."  Pl. Resp. Br. at 23 (emphasis added).  Eteros fails to cite any authority for its assertion, and for the reasons noted, the repeal of this prohibition, without more, does not meet the exemption.  The plain language of 21 U.S.C. § 863(f)(1) explicitly requires a person to specifically be authorized to engage in the conduct at issue, and is not satisfied merely by removing a prohibition on a "class of products."

Thus, if Congress had wanted to exempt all persons importing drug paraphernalia into a local, state, or Federal jurisdiction where the manufacture, possession, or distribution of drug paraphernalia has been legalized, it would have said so.  It did not, because Congress's declared intent was to prohibit trafficking of drug paraphernalia across all the States.  *See* Hearing Before the Subcommittee on Crime of the Committee on the Judiciary House of Representatives, Ninety-Ninth Congress, Second Session on H.R. 1625 (testimony of House Rep. Levine) (stating that "[it] is only through Federal legislation, such as this that we can close what had become a gaping loophole for the paraphernalia industry in the law," whereby paraphernalia dealers who could no longer utilize intrastate commerce simply turned to interstate commerce).  Instead, Congress limited the scope of the exemption in 21 U.S.C. § 863(f)(1) to specifically authorized persons who are specifically authorized to possess, manufacture or distribute such items.

Eteros attempts to claim the benefit of a statutory exemption applying only to a "person authorized by … State … law to manufacture, possess, or distribute such items," but Eteros has not identified any local, state, or Federal law that specifically authorizes it to manufacture,

possess, or distribute the drug paraphernalia that it attempted to import.  Accordingly, Eteros has

failed to carry its burden of demonstrating that it is entitled to the exemption in 21 U.S.C.

§ 863(f)(1).

## II.     Eteros Incorrectly Relies On The *Murphy* Case, 21 U.S.C. § 903, And The Anticommandeering Doctrine

Eteros claims that the Government's interpretation of the term "any person authorized" in

subsection 863(f)(1) is contrary to the definition of "authorized by law" expressed in *Murphy v.*

*National Collegiate Athletic Association (NCAA)*, 138 S. Ct. 1461 (2018); runs afoul of 21

U.S.C. § 903; and is contrary to the Tenth Amendment of the Constitution and the

"anticommandeering" prohibition insofar as the Government's interpretation "seeks to engraft" a

person-specific authorization.  Pl. Resp. Br. at 18-35.  Each of these arguments is addressed in

turn below.

### A.  *Murphy* Is Inapposite

Eteros contends that legalization equals authorization under the law, and, for that

proposition, relies primarily on *Murphy v. NCAA*.  *Murphy* is distinguishable as to the text of the

law at issue, its purpose, and its context.

The *Murphy* plaintiffs filed suit on the ground that a 2014 New Jersey state law, 2014

N.J. Laws p. 602 (NJ 2014 Act), violated a Federal law, the Professional and Amateur Sports

Protection Act of 1992 (PASPA), Pub. L. 102–559, 28 U.S.C. § 3701, *et seq.*  The NJ 2014 Act

was "framed as a repealer" specifically "repeal[ing] the provisions of state law prohibiting sports

gambling insofar as they concerned the 'placement and acceptance of wagers' on sporting events

by persons 21 years of age or older at a horseracing track or a casino or gambling house in

Atlantic City."  *Murphy*, 138 S. Ct. at 1472 (citing the NJ 2014 Act).  The PASPA, however,

purported to make it "'unlawful' for a State or any of its subdivisions 'to sponsor, operate,

advertise, promote, license, or authorize by law or compact … a lottery, sweepstakes, or other betting, gambling, or wagering scheme based … on' competitive sporting events." *Id.* at 1470 (ellipses in the original) (quoting 28 U.S.C. § 3702). The *Murphy* court found that the act of repealing laws banning sports gambling amounted to an authorization of that activity. *Id.* at 1474.

Eteros seeks to apply the *Murphy* court's construction of authorization to its situation here. Pl. Resp. Br. at 23. However, there are several key differences between this case and *Murphy* which militate against such a construction. The language at issue in *Murphy*, *i.e.*, making it "unlawful for a governmental entity to … authorize by law" sports gambling, focuses on a ban on governmental action. 21 U.S.C. § 3701. In contrast to *Murphy*, which did not address any *exemption* in Federal law, the statute at issue here contains explicit "exemptions" at subsection (f), including an exemption for "any person authorized by … State … law," 21 U.S.C. § 863(f)(1), such that the language of section 863 is not only dissimilar, but *opposite* to the language in PASPA.

PASPA attempted to prevent the states from enacting state laws legalizing sports gambling, while the exemption at issue provides Federal recognition of state laws that choose to authorize certain persons to possess, manufacture, or distribute certain drug paraphernalia. The *Murphy* Court's interpretation of authorization as including repeal of a prohibition on an activity (*i.e.*, sports gambling) is inapplicable to a Federal *exemption* permitting a state or local law to positively authorize a person. Thus, the word "authorized" in the context of § 863(f)(1), which unlike PASPA refers to an authorized *person* rather than an authorized *activity*, should not be read as referring merely to the general removal of a prior ban on an activity, but, rather, must be given its plain meaning under its primary definition, which is "[t]o empower, to give a right or

authority to act." *Black's Law Dictionary*, 6th Ed. 1990. In sum, the *Murphy* case interpreted a

different Federal statute that uses meaningfully different language.

### B. Section 903 Is Not Implicated In Determining Whether Eteros Satisfies The Exemption

Next, Eteros argues that "[t]he Government's efforts here to engraft 'Federal conditions'

on exemptions established by State law pursuant to 21 U.S.C. § 863(f)(1) directly violate the

canon set out in 21 U.S.C. § 903." Pl. Resp. Br. at 26. Eteros is incorrect.

Section 903 provides as follows:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

Eteros's argument with respect to section 903 is difficult to understand because the

Government's reading of section 863 is based entirely on the plain meaning of the statutory text,

which conditions application of the exemption at subsection 863(f)(1) on a "person" being

"authorized" to "manufacture, possess, or distribute such items." Such a plain reading of the

statute does not "engraft" any condition that is not explicitly provided by the statutory text, nor

does it "occupy the field … to the exclusion of any State law on the same subject matter which

would otherwise be within the authority of the State[.]" 21 U.S.C. § 903. There is no "positive

conflict between" subsection 863(f)(1) and Washington's RCW 69.50.412, "so that the two

cannot consistently stand together." *Id*

Subsection 863(a)(3) makes it criminally unlawful to import drug paraphernalia into any

port of the United States unless the specified conditions for the exemptions at subsection (f) are

met, which does not impinge on any state's laws, including whether to prosecute offenders

within a state's jurisdiction under state law.  Nor does the plain meaning of the statute, requiring specific authorization of a person as a condition for the exemption under 21 U.S.C. § 863(f)(1), interfere or impinge on any "subject matter which would otherwise be within the authority of the State."  21 U.S.C. § 903.  Rather, subsection 863(f)(1) is a Federal exemption to a Federal law, which does not impinge on any state law.  To the contrary, the exemption empowers the states, which, by satisfying the exemption, can in effect create an exception to the general prohibition on drug paraphernalia under Federal law.

CBP's only action here was to exclude Eteros's merchandise from importation into the Customs territory of the United States, a power vested solely with the Federal government. *Board of Trustees of University of Illinois v. U.S.*, 289 U.S. 48, 57 (1933) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted.").  There is nothing about CBP's exclusion of Eteros's drug paraphernalia that preempts Washington's laws, or restricts or constrains Washington from amending its laws.  Washington remains free to decriminalize, re-criminalize, and regulate drug paraphernalia as it sees fit.  The Federal question, in interpreting section 863, is whether Washington law provides the requisite "authorization" to Eteros under subsection 863(f)(1).

As explained above, if Congress had wanted to exempt all persons importing drug paraphernalia into a local, state, or Federal jurisdiction where the manufacture, possession, or distribution of drug paraphernalia is not unlawful, it would have said so.  Instead, Congress limited the scope of the exemption in 21 U.S.C. § 863(f)(1) to specifically authorized persons.  Eteros has not and cannot demonstrate that it is specifically authorized by any local, state, or Federal law to manufacture, possess, or distribute the imported drug paraphernalia.  Thus, there is no issue of any conflict of laws here; rather, Eteros has simply failed to demonstrate that it

meets the statutory conditions for personal authorization necessary to satisfy the exemption at 21 U.S.C. § 863(f)(1).

### C.  There Is No Violation Of The Anticommandeering Principle Of The Tenth Amendment

Finally, Eteros argues that "the Government's notion that the Federal statute imposes some type of conditions" on the applicability of the exemption in 21 U.S.C. § 863(f)(1) would impermissibly "dictate how the States should exercise their police powers" in violation of the anticommandeering doctrine of the Tenth Amendment to the U.S. Constitution.  Pl. Resp. Br. at 30.  As explained by the Supreme Court in *Murphy*, the anticommandeering doctrine is based on accountability concerns, and provides that "[w]here a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents."  *Murphy*, 138 S. Ct. at 1477 (quoting *New York v. United States*, 505 U.S. 144, 178 (1992)).  "The concern triggering the doctrine arises only 'where the Federal Government compels States to regulate' or to enforce federal law, thereby creating the appearance that state officials are responsible for policies Congress forced them to enact."  *Id.* at 1489 (J. Ginsburg, dissenting) (quoting *New York*, 505 U.S. at 168).

Here, however, the only question is whether the *importation* of Eteros's drug paraphernalia is prohibited, a plain matter of Federal law.  The *Murphy* case that Eteros relies on holds that a Federal law that purported to require states to maintain certain laws on their own books violated the Tenth Amendment.  In *Murphy*, the Supreme Court held that there is no meaningful distinction between repealing a prohibition against, or affirmatively authorizing, sports gambling in the context of the anticommandeering rule, which prohibits Congress from directing state legislatures to act or refrain from acting in an area that Congress itself has chosen not to directly legislate, because "[t]he basic principle – that Congress cannot issue direct orders

to state legislatures – applies in either event." *Id.* at 1478.  The Federal statute that the Supreme Court interpreted in *Murphy* attempted to *prohibit* a state from, among other things, "authoriz[ing] by law" any "lottery, sweepstakes, or other betting, gambling, or wagering scheme based … on competitive sporting events."  *Id.* at 1470 (ellipses in the original).  The type of state "authorization" that PASPA tried to forbid applied to an activity regulated by the State of New Jersey.  Because *Murphy* concerned a Federal law that had the effect of *requiring* states to maintain their existing laws against sports gambling, the Court held that such a requirement violated the Tenth Amendment.

Here, by contrast, the exemption found at subsection 863(f)(1) does not prohibit, limit, forbid, or otherwise make it unlawful for the states to do anything.  CBP's decision to exclude Eteros's merchandise does not preempt Washington's laws or restrict or constrain Washington from amending those laws.  Washington remains free to decriminalize, re-criminalize, regulate, and/or deregulate marijuana and marijuana-related drug paraphernalia.  The question for this Court, in interpreting the Federal law, is whether whatever Washington has done constitutes a sufficient "authorization" to Eteros under subsection 863(f)(1).  *Murphy* is thus inapposite where, as here, the Federal law specifically permits the states, if they so choose, to exempt "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items" from criminal liability under section 863.

Subsection 863(f)(1) *permits, but not does require,* a state legislature to authorize a certain person to manufacture, possess, or distribute certain items.  This is not a conscription of state governments as Federal agents.  Indeed, the importation ban of subsection 863(a)(3) is enforced at the border by Federal agents, *i.e.*, CBP personnel, not state officials.  Nor does this statutory provision "directly … compel the States to require or prohibit" anything, *see* Pl. Resp.

17

Br. at 32 (quoting *New York*, 505 U.S. at 161 and 166).  Accordingly, neither the anticommandeering doctrine nor Eteros's Tenth Amendment arguments are relevant here. Rather, the plain language of the Federal statute provides an exemption for "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items," and Eteros has failed to demonstrate that it is a person who holds any such specific authorization to manufacture, possess, or distribute items such as the imported drug paraphernalia.

In sum, the plain text and structure of 21 U.S.C. § 863 make it clear that a state law generally legalizing the manufacture, use, and distribution of drug paraphernalia within a state does not provide blanket authorization to import drug paraphernalia through U.S. ports of entry. Such an interpretation would impermissibly frustrate the overarching purpose of the statute, and would impermissibly impair and frustrate the achievement of Federal uniformity in an area where Federal uniformity is essential.

## <u>CONCLUSION</u>

For the reasons explained above and in our moving brief, we respectfully request that the

Court enter judgment for the United States and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

January 31, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____

ETEROS TECHNOLOGIES USA, INC.                    :
                                                 :
                        Plaintiff,               :
                                                 :          Court No. 21-00287
                        v.                       :
                                                 :
UNITED STATES,                                   :
                                                 :
                        Defendant.               :
_____              :

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division,

Commercial Litigation Branch, International Trade Field Office, who is responsible for the

Government's memorandum, dated January 31, 2022, relying upon the word count feature of the

word processing program used to prepare the memorandum, certify that this memorandum

complies with the word count limitation under the Court's chambers procedures, and contains

5,391 words.

                                                 <u>/s/ Guy Eddon</u>