Slip Op. 22-111

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ETEROS TECHNOLOGIES USA, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Before: Judge Gary S. Katzmann**<br>**Court No. 21-00287** |

## OPINION

[The court grants Eteros' Motion for Judgment on the Pleadings and denies the United States' Cross-Motion for Judgment on the Pleadings.]

Dated: <u>September 21, 2022</u>

<u>Richard F. O'Neill</u>, Neville Peterson LLP, of Seattle, WA, argued for Plaintiff Eteros Technologies USA, Inc. With him on the briefs were <u>John M. Peterson</u>, of New York, N.Y., and <u>Patrick B. Klein</u>.

<u>Guy R. Eddon</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. With him on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Justin R. Miller</u>, Attorney in Charge, International Trade Field Office, <u>Aimee Lee</u>, Assistant Director. Of Counsel on the briefs were <u>Mathias Rabinovitch</u> and <u>Alexandra Khrebtukova</u>, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Katzmann, Judge: This case concerns the interplay between the federal and state systems, specifically the Washington State system, governing marijuana-related drug paraphernalia. It arises from Customs and Border Protection ("CBP")'s exclusion from entry at the Port of Blaine, Washington of Plaintiff's motor frame assemblies -- component parts of an agricultural machine designed to separate the leaf from the flower of cannabis or other plant material -- on the grounds that the machine constituted drug paraphernalia prohibited by the federal Controlled Substances Act ("CSA"). The resultant dispute presents a matter of first impression: whether Washington

State's repeal of certain prohibitions attending marijuana-related drug paraphernalia "authorize[s]" Plaintiff such that Plaintiff's importation through the Port of Blaine is exempted by the CSA from the federal prohibition on importing drug paraphernalia.  The court finds that Plaintiff is so authorized.

**BACKGROUND**

### I.    *Legal Background*

Under section 1595a of 19 U.S.C., "[m]erchandise which is introduced or attempted to be introduced into the United States" "may be seized and forfeited if," inter alia, "its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute."  19 U.S.C. § 1595a(c)(2)(A).[1]  Where "merchandise may be seized and forfeited," Customs may instead "deny entry and permit the merchandise to be [re]exported."  19 C.F.R. § 151.16(j).[2]  One "law relating to health" for the purposes of 19 U.S.C. § 1595a is the Controlled

---

[1] 19 U.S.C. § 1595a -- Aiding unlawful importation -- provides in relevant part:

. . .

(c) Merchandise introduced contrary to law

Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:

. . .

(2) The merchandise may be seized and forfeited if—

(A) its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute.

[2] 19 C.F.R. § 151.16(j) instructs that:

. . .

If otherwise provided by law, detained merchandise may be seized and forfeited. In lieu of seizure and forfeiture, where authorized by law, Customs may deny entry

Substances Act ("CSA"), see 21 U.S.C. §§ 801–904, a federal statute with the "long title"[3] "An

Act to amend the Public Health Service Act and other laws to provide increased research, into, and

prevention of, drug abuse and drug dependence; to provide for treatment and rehabilitation of drug

abusers and drug dependent persons; and to strengthen existing law enforcement authority in the

field of drug abuse."  Pub. L. No. 91-513, 84 Stat. 1236, 1236 (1970).

### A.      *The Federal System on Drug Paraphernalia*

Under the CSA, Congress made it unlawful for any person:

(1) to sell or offer for sale drug paraphernalia;

(2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or

(3) to import or export drug paraphernalia.

21 U.S.C. § 863(a)(1)–(3).[4]  "Any drug paraphernalia involved in any violation of subsection (a)"

"shall be subject to seizure and forfeiture upon the conviction of a person for such violation."  Id.

§ 863(c).  However, the CSA specifies that "[t]his section shall not apply to" "any person

authorized by local, State, or Federal law to manufacture, possess, or distribute such items."  Id. §

863(f)(1).  What constitutes "authoriz[ation]" by local, state, or federal law for the purposes of the

(f)(1) exemption is otherwise undefined.

---

and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation.

[3] "The long title generally summarizes or describes the purpose of the bill" and "appears after the bill number and also immediately following the prefatory words 'A BILL.'"  Victoria L. Killion, Cong. Rsch. Serv., R46484, Understanding Federal Legislation: A Section-by-Section Guide to Key Legal Considerations 17 (2022).

[4] Subsection 863(d) of 21 U.S.C. provides the federal definition of "drug paraphernalia."  As established infra, Eteros has stipulated for the purposes of this litigation that its merchandise qualifies as "drug paraphernalia" under § 863(d).  See Pl.'s Br. at 1.  As such, the court need not parse the federal definition.

**B.     *The Washington State System on Drug Paraphernalia***

In November 2012, Washington State legalized adult recreational use of marijuana.  See

Initiative 502 to the Legislature, 2013 Wash. Sess. Laws ch. 3 (codified as amended at Wash. Rev.

Code §§ 69.50.101–710) ("Initiative 502").[5]  As part of Initiative 502, the Washington legislature

amended its prohibitions on drug paraphernalia to read:

> (1) It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance <u>other than marijuana</u>.  Any person who violates this subsection is guilty of a misdemeanor.
>
> (2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance <u>other than marijuana</u>.    Any person who violates this subsection is guilty of a misdemeanor.

Wash. Rev. Code § 69.50.412 (2013) (emphasis added).  Moreover:

> (1) Every person who sells or gives, or permits to be sold or given to any person any drug paraphernalia in any form commits a class I civil infraction under chapter 7.80 RCW.  For purposes of this subsection, "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance <u>other than marijuana</u>.

---

[5] The parties agree that Initiative 502 -- as codified as part of the Revised Code of Washington ("RCW") at chapter 69.50 -- <u>legalized</u> adult recreational marijuana use in Washington State.  <u>See, e.g.</u>, Pl.'s Resp. in Opp. to Def.'s Cross-Mot. for J. on Pleadings and Reply in Supp. of Pl.'s Mot. for J. on Pleadings at 7–18, Dec. 10, 2021, ECF No. 20 ("Pl.'s Reply"); Def.'s Reply Br. in Supp. of Cross-Mot. for J. on Pleadings at 4, Jan. 31, 2022, ECF No. 25 ("Def.'s Reply") ("We do not contend that Washington state has 'not legalized' marijuana or marijuana-related drug paraphernalia").  However, as discussed <u>infra</u>, the parties disagree as to whether such legalization by Washington State confers "authoriz[ation]" for the purposes of the federal exemption at 21 U.S.C. § 863(f)(1).  <u>See, e.g.</u>, Def.'s Reply at 9; Pl.'s Reply at 20–23.

Id. § 69.50.4121 (emphasis added).[6]

## II.    *Factual Background*

The parties assert that the material facts of this case are not in dispute.[7]  At issue is the Plaintiff corporation Eteros Technologies USA, Inc. ("Eteros")'s attempted importation into the United States of the Subject Merchandise -- certain motor frame assemblies for an agricultural machine,  dubbed the "Mobius M108S Trimmer," designed to separate the leaf from the flower of cannabis and/or other plant material -- through the Port of Blaine, Washington on or around April 10, 2021.  Compl. at 1–2, June 11, 2021, ECF No. 4; Answer to Compl. at 2, July 16, 2021, ECF No. 10 ("Answer").   After the Subject Merchandise was presented to Customs and Border Protection ("CBP") for examination, CBP issued a Notice of Detention to Eteros.  Compl. at 2; Answer at 2.

On April 16, 2021, CBP sent Eteros a CF 28 Request for Information inquiring about the Subject Merchandise, particularly its intended end-use, to which Eteros timely responded on April 19, 2021.  See Compl. at 6; Answer at 2.  On April 27, 2021, CBP sent Eteros a second CF 28 Request for Information, this time asking whether the Subject Merchandise would "be used at any

---

[6] The court notes that the statute as amended in 2013 applies to this dispute.  Later amendments to sections 69.50.412 and 69.50.4121 in 2021 and 2022 -- which removed certain uses of drug paraphernalia and replaced "marijuana" with "cannabis" -- took effect after the May 10, 2021 CBP decision here at issue.  Importantly, these amendments did not remove the marijuana exemptions established in sections 69.50.412 and 69.50.4121.

[7] Before the court, parties have each moved for judgment on the pleadings pursuant to USCIT Rule 12(c).  See Pl.'s Mot. for J. on Pleadings, Sept. 10, 2021, ECF No. 15 ("Pl.'s Br."); Def.'s Cross-Mot. for J. on Pleadings, Nov. 5, 2021, ECF No. 19 ("Def.'s Br.").  In so moving, both parties acknowledge that "[j]udgment on the pleadings is appropriate where there are no material facts in dispute."  Pl.'s Br. at 10 (quoting Forest Labs., Inc. v. United States, 476 F.3d 877, 881 (Fed. Cir. 2007)); see also Def.'s Br. at 9 (quoting United States v. Inn Foods, Inc., 27 CIT 698, 699, 264 F. Supp. 2d 1333, 1334 (2003), rev'd on other grounds, 383 F.3d 1319 (Fed. Cir. 2004)) (same).

point, in any way, to manufacture, produce, or process a product that has a [THC][8] concentration over 0.3 percent." Compl. at 7, Ex. E (footnote not in original); Answer at 3. Eteros responded that although it lacked access to end-user records necessary to know the THC content of cannabis products used with the Subject Merchandise, the machine is capable of use with marijuana. Compl. at 7, Ex. E; Answer at 3.

Anticipating that CBP was seeking to discern whether the Subject Merchandise meets the federal definition of "drug paraphernalia" under 21 U.S.C. § 863(d) -- and thereby, whether the Subject Merchandise contravened the import prohibition of § 863(a)(3) -- Eteros further submitted that:

(i)     the Subject Merchandise does not qualify as "drug paraphernalia" because the primary intended use of the Mobius M108S is with hemp, not marijuana; and

(ii)    even if the Mobius M108S qualifies as "drug paraphernalia" under § 863(d), the exemption established in § 863(f)(1) renders § 863(a)(3)'s import prohibition inapplicable in light of Washington State's legalization of marijuana and marijuana-related paraphernalia.

Compl. at 7–9, Ex. E; Answer at 3 (admitting the allegations to the extent supported by Plaintiff's Protest Memorandum and Exhibits, but otherwise denying).

---

[8] "THC" stands for delta-9 tetrahydrocannabinol, the primary psychoactive component of cannabis. See Ziva D. Cooper & Margaret Haney, Actions of Delta-9-tetrahydrocannabinol in Cannabis: Relation to Use, Abuse, Dependence, 21 Int'l Rev. Psychiatry 104, 104 (2009). The CSA distinguishes hemp -- which is federally legal -- from marijuana -- which is federally illegal -- by THC levels. See 7 U.S.C. § 1639o (defining "hemp" as "the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis").

On May 10, 2021, CBP informed Eteros by email that it was excluding the Subject Merchandise under the authority of 19 C.F.R. § 151.16(j).[9]  Compl. at 9–10, Ex. F; Answer at 3. In the Notice of Exclusion, CBP explained that Eteros' Subject Merchandise constitutes "drug paraphernalia" under 21 U.S.C. § 863(d) and that "§ 863(f)(1) does not provide an importer a means to enter drug paraphernalia."  Compl. at 10, Ex. F; Answer at 3 (admitting the allegations to the extent supported by Plaintiff's Protest Exhibits, but otherwise denying).

Eteros timely protested CBP's exclusion of the Subject Merchandise on or around May 11, 2021, see Compl. at 10; Answer at 3, which was denied by operation of law, pursuant to 19 U.S.C. § 1499(c)(5)(B),[10] on June 11, 2021, see Compl. at 10; Answer at 3.

### III.      Procedural Background

On June 11, 2021, Eteros timely filed this action against the United States to challenge CBP's denial of its protest.  Compl. at 11; Answer at 3.  On September 10, 2021, Eteros moved for judgment on the pleadings pursuant to USCIT Rule 12(c).  See Pl.'s Mot. for J. on Pleadings, Sept. 10, 2021, ECF No. 15 ("Pl.'s Br.").  In said motion, Eteros stipulated for the purpose of the litigation that the Subject Merchandise satisfies the federal statutory definition of "drug paraphernalia" under 21 U.S.C. § 863(d).  Id. at 1.  Defendant the United States ("the Government") responded with a cross-motion for judgment on the pleadings on November 5, 2021, see Def.'s Cross-Mot. for J. on Pleadings, Nov. 5, 2021, ECF No. 19 ("Def.'s Br."), to which Eteros responded in opposition and in support of its own motion on December 10, 2021, see Pl.'s

---

[9]  Supra note 2.

[10]  19 U.S.C. § 1499(c)(5) -- Effect of failure to make determination -- provides in relevant part:

. . .

> (B) For purposes of section 1581 of title 28, a protest against the decision to exclude the merchandise which has not been allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day.

Resp. in Opp. to Def.'s Cross-Mot. for J. on Pleadings and Reply in Supp. of Pl.'s Mot. for J. on Pleadings, Dec. 10, 2021, ECF No. 20 ("Pl.'s Reply").  The Government replied in kind on January 31, 2022.  See Def.'s Reply Br. in Supp. of Cross-Mot. for J. on Pleadings, Jan. 31, 2022, ECF No. 25 ("Def.'s Reply").

In preparation for oral argument, the court issued questions on May 4, 2022, see Ct.'s Qs. for Oral Arg., May 4, 2022, ECF No. 29, and the parties responded in writing on May 16, 2022, see Pl.'s Resp. to Ct.'s Oral Arg. Qs., May 16, 2022, ECF No. 31 ("Pl.'s Oral Arg. Subm."); Def.'s Resp. to Ct.'s Oral Arg. Qs., May 16, 2022, ECF No. 32 (Def.'s Oral Arg. Subm.").  Oral argument was held on May 19, 2022.  See Oral Arg., May 19, 2022, ECF No. 33.  Thereafter, on May 26, 2022, the parties each submitted a post-argument brief.  See Pl.'s Post Oral Arg. Subm., May 26, 2022, ECF No. 35 ("Pl.'s Suppl. Br."); Def.'s Post Oral Arg. Subm., May 26, 2022, ECF No. 34 ("Def.'s Suppl. Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).  The standard of review is de novo based upon the record developed before the court.  See 28 U.S.C. § 2640(a)(1). The court will grant a party's motion for judgment on the pleadings pursuant to USCIT Rule 12(c) "where there are no material facts in dispute and the party is entitled to judgment as a matter of law."  Forest Labs., 476 F.3d at 881; see also N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994).

## DISCUSSION

Before the court Eteros contends that even if -- as it has stipulated -- the Subject Merchandise is "drug paraphernalia" under 21 U.S.C. § 863(d), Washington State law "authorize[s]" Plaintiff to manufacture, possess, and distribute cannabis paraphernalia, such that Eteros is not subject to § 863(a)(3)'s import prohibition by operation of the federal exemption at

§ 863(f)(1); accordingly, Eteros asks the court to enter judgment on the pleadings for Plaintiff and to direct the Port Director of CBP in Blaine, Washington, to release Eteros' goods.  See Pl.'s Br. at 1–2; Pl.'s Reply at 33.  By contrast, the Government argues that Eteros' arguments fail as a matter of law because Washington State's mere legalization of marijuana and its paraphernalia does not constitute "authoriz[ation]" for the purposes of 21 U.S.C. § 863(f)(1), such that Eteros is still subject to and in contravention of § 863(a)(3)'s import prohibition.  See Def.'s Reply at 3.  Defendant, accordingly, asks the court to enter judgment on the pleadings for the Government.  Id. at 2.

For the reasons articulated below, the court discerns that Eteros is "authorized" under 21 U.S.C. § 863(f)(1) and thereby exempted in Washington State from subsection 863(a)'s prohibition on importing drug paraphernalia.  As such, the court holds that 21 U.S.C. § 863 does not justify seizure or forfeiture of Eteros' Subject Merchandise required for exclusion under 19 C.F.R. § 151.16(j).

## I.      *The Parameters of the Federal Exemption.*

The court begins by parsing the parameters of the federal exemption found at 21 U.S.C. § 863(f)(1), before attempting to apply the exemption to the particular facts of the case at bar.  The court addresses two issues: (i) the scope of the (f)(1) exemption; and (ii) the conditions that trigger the exemption's applicability.

Recall that section 863 of the CSA instructs in relevant part:

**(a) In general**

It is unlawful for any person—

    **(1)** to sell or offer for sale drug paraphernalia;

    **(2)** to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or

**(3)** to import or export drug paraphernalia.

…

**(c) Seizure and forfeiture**

Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture upon the conviction of a person for such violation.

. . .

**(f) Exemptions**

This section shall not apply to—

**(1)** any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items.

21 U.S.C. § 863(a), (c), (f)(1).

### A.    *The Scope of 21 U.S.C. § 863(f)(1)'s Exemption*

The court first discerns that the phrase "[t]his section shall not apply" within the (f)(1) exemption establishes that when the exemption is implicated, <u>none</u> of the provisions under section 863 apply -- including neither the three prohibitions enumerated in 21 U.S.C. § 863(a)(1)–(3), nor the basis for seizure and forfeiture provided in § 863(c).  Such a construction accords with both the conventional meaning of "section" and standard interpretive guides.  For example, the Supreme Court has explained that "Congress ordinarily adheres to a hierarchical scheme in" drafting statutes, <u>see</u> <u>Koons Buick Pontiac GMC, Inc., v. Nigh</u>, 543 U.S. 50, 51 (2004), with "[a] bill . . . divided into numbered sections," which "are not repeated," <u>see</u> D. Hirsch, <u>Drafting Federal Law</u> § 3.8, p. 27 (2d ed. 1989).  From there, a section is generally broken into—

(A) subsections (starting with (a));

(B) paragraphs (starting with (1));

(C) subparagraphs (starting with (A));

(D) clauses (starting with (i))

Koons, 543 U.S. at 60–61 (first reproducing instructions from the House Legislative Counsel's Manual on Drafting Style, HLC No. 104–1, p. 24 (1995); then reproducing substantively identical instructions from the Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997)).[11]   Congress followed this hierarchical scheme in drafting the CSA, including section 863.[12]   Accordingly, the court agrees that "[t]here can be no question that subsection (f)'s use of the word 'section' refers to the entirety of 21 U.S.C. § 863," Pl.'s Br. at 20, such that when the (f)(1) exemption is implicated, none of the provisions under section 863 -- including, as just one example, the federal prohibition on importing or exporting drug paraphernalia established at 21 U.S.C. § 863(a)(3) -- apply.

### B.     The Conditions Triggering 21 U.S.C. § 863(f)(1)'s Applicability

The court next considers what conditions are sufficient to trigger the (f)(1) exemption's applicability.  The exemption instructs "[t]his section shall not apply to" "any person authorized by local, State, <u>or</u> Federal law to manufacture, possess, <u>or</u> distribute such items."  21 U.S.C. § 863(f)(1) (emphasis added).  In light of the exemption's double disjunctive "or," the court discerns that "authoriz[ation]" (putting aside the precise meaning of this term for the moment) by <u>one</u> relevant legislative body -- be it local, state, or federal -- to engage in <u>one</u> of the enumerated

---

[11] Although these Manuals post-date the enactment of section 863 of the CSA, <u>see, e.g.</u>, <u>Posters 'N' Things, Ltd. v. United States</u>, 511 U.S. 513, 516 n.5 (1994) (detailing Congress's enactment of 21 U.S.C. § 863 in 1990), they are consistent with earlier drafting guides, <u>see, e.g.</u>, Hirsch, <u>supra</u>, at 27 ("A bill is divided into numbered sections . . . The major subdivisions of a section are subsections.  They appear as small letters in parentheses ('(a)', etc.) . . . Subsections are divided into numbered paragraphs ('(1)', '(2)', etc.) . . . Paragraphs are divided into tabulated lettered subparagraphs ('(A)', '(B)', etc.) . . . Subparagraphs are divided into clauses bearing small roman numerals ('(i)', '(ii)', '(iii)', '(iv)').").

[12] In the CSA, the word "section" is used to refer to a division preceded by a non-repeating number and the word "subsection" is used to refer to a subdivision preceded by a lower-case letter.  <u>See, e.g.</u>, 21 U.S.C. § 863(b) ("Anyone convicted of an offense under <u>subsection (a) of this section</u> shall be imprisoned for not more than three years and fined under title 18." (emphasis added)).

activities -- be it manufacture, possession, or distribution of drug paraphernalia -- would be sufficient to trigger the (f)(1) exemption's applicability.  This construction accords with "the ordinary meaning of that language," see Milner v. Dep't of Navy, 562 U.S. 562, 569 (2011) (quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985)), as Merriam-Webster defines "or" in part "as a function word to indicate an alternative // coffee or tea," see Or, Merriam-Webster Online Dictionary, www[.]merriam-webster[.]com/dictionary/or (last visited Sept. 15, 2022).[13]

In light of the preceding discussion, the court finds that, for example, "authoriz[ation]"[14] by a relevant state to possess drug paraphernalia would alone be sufficient to implicate the (f)(1) exemption, thereby rendering the entirety of section 863 -- including the prohibitions contained at 21 U.S.C. § 863(a) and the basis for seizure and forfeiture under § 863(c) -- inapplicable.

## II.   *The Interplay between the Federal and Washington State Systems Necessitates Construing the Term "Authorized" in 21 U.S.C. § 863(f)(1) as a Matter of First Impression.*

Applying the above parameters to the case at bar, the court finds that the interplay between the federal and Washington State systems on marijuana-related drug paraphernalia necessitates construing the term "authorized" in 21 U.S.C. § 863(f)(1) as a matter of first impression.

Recall that consistent with Washington State's legalization of adult recreational marijuana use, the Washington legislature amended its prohibitions on drug paraphernalia to read in relevant part:

(2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under

---

[13] Please note the court has removed the "http" designations and bracketed the periods within all hyperlinks to outside webpages in order to disable those links.  For archived copies of the webpages cited in this opinion, please consult the docket.

[14] Again, putting aside the precise meaning of this term for the moment.

circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance <u>other than marijuana</u>.   Any person who violates this subsection is guilty of a misdemeanor.

Wash. Rev. Code § 69.50.412 (2013) (emphasis added).  By including the phrase "other than marijuana," the Washington legislature established that it is not unlawful -- or that, in other words, it is legal[15] -- to deliver, possess, and/or manufacture marijuana-related drug paraphernalia.

Above, the court discerned that it need only find "authoriz[ation]" by <u>one</u> enumerated legislative body -- local, state, <u>or</u> federal -- to engage in <u>one</u> enumerated activity -- possession, distribution, <u>or</u> manufacture -- to trigger the (f)(1) exemption, and here, Washington State has made it legal to, inter alia, possess marijuana-related drug paraphernalia.  Thus, the next question is whether this legalization of possession afforded by section 69.50.412 of the Revised Code of Washington amounts to "authoriz[ation]" for the purposes of the federal exemption under 21 U.S.C. § 863(f)(1).  The court turns now to this matter of statutory interpretation.

### III.   *Washington State "Authorize[s]" Eteros for the Purposes of 21 U.S.C. § 863(f)(1).*

The Government maintains that Washington State law does not "authorize[]" Eteros for the purposes of the federal exemption because "21 U.S.C. § 863(f)(1) explicitly requires a person to [be] specifically . . . authorized" -- through, for example, the grant of a personal license, permit, or the like -- such that "a [S]tate's legalization of marijuana-related drug paraphernalia does not satisfy th[is] specific personal authorization" requirement.  <u>See</u> Def.'s Reply at 2, 10–11.  By contrast, Eteros argues that Washington State law, specifically Wash. Rev. Code § 69.50.412,

---

[15] Merriam-Webster enumerates the words "lawful," "legal," and "legitimate" as antonyms to the word "unlawful."   <u>See</u> <u>Unlawful</u>, <u>Merriam-Webster Online Dictionary</u>, www[.]merriam-webster[.]com/dictionary/unlawful#synonyms (last visited Sept. 15, 2022).

"authorize[s]" Eteros for the purposes of 21 U.S.C. § 863(f)(1) and that the Government's requirement of person-specific authorization is impermissible.  See Pl.'s Reply at 20–23.

In adjudicating this dispute, the court -- informed by fundamental principles of statutory construction -- looks to the plain meaning of the statute, caselaw, as well as legislative history and other indicia of Congressional intent, as available and appropriate.  See, e.g., Cook v. Wilkie, 908 F.3d 813, 817 (Fed. Cir. 2018) (discerning statutory meaning "by employing the traditional tools of statutory construction," including "the statute's text, structure, . . . legislative history, and . . . relevant canons of interpretation" (internal quotation marks omitted) (quoting Delverde, SrL v. United States, 202 F.3d 1360, 1363 (Fed. Cir. 2000))).  See generally Robert A. Katzmann, Judging Statutes (2014).  Upon deploying these "traditional tools," the court adopts Eteros' interpretation.

### A.    Ordinary Meaning is Inconclusive

The court construes the statutory exemption of 21 U.S.C. § 863(f)(1) de novo[16] and begins the inquiry, as it must, with the text.  See, e.g., Bates v. United States, 522 U.S. 23, 29 (1997).  Again, the text reads in relevant part:

**(f) Exemptions**

This section shall not apply to—

    **(1)** any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items;

---

[16] The Government has not requested deference for its statutory interpretation under the framework developed in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.  See 467 U.S. 837 (1984); see also Oral Arg. at 1:07:12–25 (Government Counsel's assertion at oral argument that "[t]he Government does not seek deference to the agency's interpretation of (f)(1).  In fact, here, there is really no applicable administrative interpretation to which the court can defer"); see also Wilkie, 908 F.3d at 817 (reviewing a matter of statutory interpretation de novo where "[t]he Secretary [did] not request[] Chevron deference for his interpretation" and the Federal Circuit agreed "that no such deference [wa]s warranted").  Because the court agrees that there is no applicable administrative interpretation here to defer to, the court proceeds to construe the federal statute de novo.

21 U.S.C. § 863(f)(1) (emphasis added).  The Government argues that by its plain terms, the combination of "person"[17] and "authorized" in 21 U.S.C. § 863(f)(1) "explicitly requires a person to [be] specifically . . . authorized to engage in the conduct at issue."  See Def.'s Reply at 11; see also Oral Arg. at 1:04:15–25.  For its part, Plaintiff contends that Washington plainly "authorized" Eteros for purposes of 21 U.S.C. § 863(f)(1) by repealing its prior prohibitions on marijuana-related drug paraphernalia, see Pl.'s Reply at 20, and that the court cannot accept the Government's person-specific construction without adding words to the statute, see Pl.'s Oral Arg. Subm. at 3.

        Proceeding on "the assumption that the ordinary meaning of . . . language accurately expresses the legislative purpose," Milner, 562 U.S. at 569 (quoting Park 'N Fly, 469 U.S. at 194), the court notes that Merriam-Webster defines "authorize" as (1) "to endorse, empower, justify, or permit by or as if by some recognized or proper authority (such as custom, evidence, personal right, or regulating power) // a custom authorized by time" and (2) "to invest especially with legal authority: EMPOWER // He is authorized to act for his father."  Authorize, Merriam-Webster Online Dictionary, www[.]merriam-webster[.]com/dictionary/authorize (last visited Sept. 15, 2022).  In addition, Black's Law Dictionary defines "authorize" as "[t]his enables a person to act; it gives the authority for a person to carry out an act."  Authorize, Black's L. Online Dictionary, thelawdictionary[.]org/authorize/ (last visited Sept. 15, 2022).

        The court assesses that it can derive support for either party's proposed construction from these definitions.  For example, on the one hand, Merriam-Webster's partial definition to "permit . . . by . . . regulating power" could be found to accommodate Eteros' position that the repeal of a prohibition by state legislative act permits the previously prohibited activity, thereby conferring

---

[17] The parties do not dispute that the term "person" in 21 U.S.C. § 863(f)(1) encompasses both human and corporate persons, like Eteros.  See Pl.'s Br. at 26; Def.'s Br. at 18; Def.'s Reply at 9.

"authoriz[ation]."  On the other hand, Black's Law Dictionary's definition to "enable[] a person to act" and "give[] the authority for a person to carry out an act" could be found to support the Government's position that "authoriz[ation]" requires an individual endowment of authority.

The court must further consider that (f)(1) specifies that "[t]his section shall not apply to" "any person authorized." 21 U.S.C. § 863(f)(1) (emphasis added).  The term "any" "has a diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning in a given statute depends upon the context and the subject matter of the statute."  Any, Black's Law Dictionary (6th ed. 1996).  Thus, accounting for the ordinary meaning of "any," the phrase "any person authorized" could conceivably be construed to encompass a class of persons authorized, as advocated by Eteros -- i.e., if "any" means "every" person authorized -- or a single person authorized, as advocated by the Government -- i.e., if "any" means "one" person authorized.

Because the court cannot discern the proper meaning of the phrase "any person authorized" by considering ordinary meaning in vacuo, the court next turns to relevant case law for guidance.

### B.    Supreme Court Case Law Suggests that Eteros is "authorized"

Eteros argues that the Supreme Court case -- Murphy v. NCAA, 138 S. Ct. 1461 (2018) -- establishes that Eteros is "authorized" and that the Government's person-specific "authorization" requirement directly conflicts with this precedent.  See Pl.'s Reply at 1–2, 20–21.  By contrast, the Government maintains that Murphy is inapposite, see Def.'s Reply at 12–14, and that Eteros lacks the requisite authorization the (f)(1) exemption plainly contemplates, see Def.'s Oral Arg. Subm. at 3, 8.  Although the Government is correct that Murphy adjudicates a different statute than the one here at issue, nevertheless, the court adheres to the reasoning of Murphy to hold that Eteros is "authorized" for the purposes of 21 U.S.C. § 863(f)(1).

The court proceeds by first laying out <u>Murphy</u>'s holding, then by establishing the pertinence of this holding to the task of interpreting the CSA, and finally by applying <u>Murphy</u>'s holding to the particular facts of the case at bar.

### 1.    *Murphy's Holding*

In <u>Murphy</u>, the Supreme Court considered, in part, whether a New Jersey state law, <u>see</u> 2014 N.J. Laws 602 (codified at N.J. Rev. Stat. §§ 5:12A-7 to -9) (repealed 2018) ("the 2014 Act" or "the Act"), contravened the federal Professional and Amateur Sports Protection Act ("PASPA"), <u>see</u> 28 U.S.C. §§ 3701–3704; <u>see also</u> <u>Murphy</u>, 138 S. Ct. at 1473–75. Until its invalidation by the <u>Murphy</u> Court in 2018, PASPA made it unlawful for a state to "authorize" sports gambling schemes. <u>See</u> 28 U.S.C. § 3702(1).[18] In 2014, the New Jersey Legislature enacted the contested Act, which "repeal[ed] provisions of [New Jersey] state law [that] prohibit[ed] sports gambling insofar as they concerned the 'placement and acceptance of wagers' on sporting events by persons 21 years of age or older at a horseracing track or a casino or gambling house in Atlantic City." <u>Murphy</u>, 138 S. Ct. at 1472 (describing New Jersey's 2014 Act). The Supreme Court was, thereafter, called on to resolve whether New Jersey's repeal of these certain state prohibitions

---

[18] The since-invalidated PAPSA read in relevant part:

It shall be unlawful for—

(1) a governmental entity to sponsor, operate, advertise, promote, license, or <u>authorize</u> by law or compact, or

. . .

a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games.

28 U.S.C. § 3702(1) (emphasis added).

"authorized" sports gambling such that the 2014 Act violated PASPA.

The <u>Murphy</u> Court answered this question in the affirmative.  Writing for the Majority, Justice Alito explained that "[t]he repeal of a state law banning sports gambling . . . gives those now free to conduct a sports betting operation the 'right or authority to act.'"  <u>Id.</u> at 1474.  In fact, the Court explained, "[t]he concept of state 'authorization' makes sense only against a backdrop of prohibition or regulation. . . . [as] [w]e commonly speak of state authorization only if the activity in question would otherwise be restricted."  <u>Id.</u>  Thus, on the grounds that "[w]hen a State completely or partially repeals old laws banning sports gambling, it 'authorize[s]' that activity," <u>id.</u> (second alteration in original), the Court held that the 2014 New Jersey Act repealing certain state prohibitions on sports gambling "authorized" those activities such that the 2014 Act violated section 3702 of PASPA.[19]

### 2.    *Pertinence of <u>Murphy</u> to Interpreting the CSA*

Eteros argues that "[a]pplying the U.S. Supreme Court's decision in <u>Murphy</u> . . . as this Court must, Eteros' conduct is <u>clearly</u> authorized by Washington State law."  Pl.'s Suppl. Br. at 2 (emphasis in original).  Disagreeing, the Government argues that <u>Murphy</u> is inapposite because the "case interpreted a different Federal statute that uses meaningfully different language."  Def.'s Reply at 14.

As a general proposition, the Government is correct that just "because words used in one statute have a particular meaning[,] they do not necessarily denote an identical meaning when used in another and different statute."  <u>United States ex rel. Chi., N.Y. & Bos. Refrigerator Co. v. Interstate Com. Comm'n</u>, 265 U.S. 292, 295 (1924) ("<u>Boston Refrigerator Co.</u>"); <u>see also</u> <u>Yates v.</u>

---

[19] Having found that the New Jersey Act violated PASPA's prohibition on state "authorization" of sports gambling, the Court next considered whether such a federal prohibition was constitutional and determined that it was not.  <u>Murphy</u>, 138 S. Ct. at 1478–85.

United States, 574 U.S. 528, 537 (2015) ("We have several times affirmed that identical language may convey varying content when used in different statutes . . . ."). However, this proposition does not preclude, in appropriate circumstances, using the same or similar definitions across statutes. See, e.g., Owen v. United States, 861 F.2d 1273, 1274 (Fed. Cir. 1988) (asserting "[w]e are shown no reason and no authority for applying a different interpretation because the term as defined appears in different statutes"). While Murphy does not explicitly direct lower courts to use its definition of "authorize" to construe statutes beyond PASPA, the court finds there are good reasons for doing so here.

First, the Murphy Court's interpretation of "authorize" turned on the word's ordinary meaning. In Boston Refrigerator Co., the Supreme Court rejected the contention that its prior construction of the words "common carrier by railroad" "was confined to the words as used in the Employers' Liability Act" where "the definition was not made to rest upon any peculiarity in the act under review, but was said to 'accord with the ordinary acceptation of the words.'" 265 U.S. at 295 (quoting Wells Fargo & Co. v. Taylor, 254 U.S. 175, 187 (1920)). Pertinently, in Murphy, the Court dedicated much discussion to the ordinary meaning of "authorize":

> One of the accepted meanings of the term "authorize," . . . is "permit." Brief for Petitioners in No. 16–476, p. 42 (citing Black's Law Dictionary 133 (6th ed. 1990); Webster's Third New International Dictionary 146 (1992)). [Petitioners] therefore contend that any state law that has the effect of permitting sports gambling, including a law totally or partially repealing a prior prohibition, amounts to an authorization. Brief for Petitioners in No. 16–476, at 42.

> Respondents interpret the provision more narrowly. They claim that the primary definition of "authorize" requires affirmative action. Brief for Respondents 39. To authorize, they maintain, means "'[t]o empower; to give a right or authority to act; to endow with authority.'" Ibid. (quoting Black's Law Dictionary, at 133).

138 S. Ct. at 1473 (emphasis in original).[20]  In concluding that New Jersey's repeal of certain

prohibitions on sports gambling "authorized" those activities, the Court explained how its holding

comports with the ordinary meaning of the term:  "The repeal of a state law banning sports

gambling not only 'permits' sports gambling (petitioners' favored definition); it also gives those

now free to conduct a sports betting operation the 'right or authority to act'; it 'empowers' them

(respondents' and the United States'[] definition)."  Id. at 1474.  In short, because the Murphy

Court's construction of "authorize" "was not made to rest upon any peculiarity in the" PASPA,

but rather "accord[s] with the ordinary acceptation of the word[]," see Boston Refrigerator Co.,

265 U.S. at 295, this court assesses that Murphy's definition is relevant to the CSA.[21]

　　　　Moreover, Murphy suggests that the Court anticipated the relevance of its construction of

"authorize" to realms beyond PASPA, including to marijuana-related contexts.  For example,

immediately after stating "[t]he concept of state 'authorization' makes sense only against a

backdrop of prohibition or regulation . . . [and] [w]e commonly speak of state authorization only

if the activity in question would otherwise be restricted," 138 S. Ct. at 1474, the Court quoted an

---

[20] The court notes that its own discussion of the ordinary meaning of "authorize," supra p. 14–16, relies on the same Dictionaries and largely the same definitions as those discussed in Murphy.

[21] The Government disagrees, arguing that "the language of section 863 is not only dissimilar, but opposite to the language in PASPA."  Def.'s Reply at 13 (emphasis in original).  This is so, in the Government's estimation, because Congress sought with PASPA to ban States from enacting laws authorizing certain activities, and bans -- by nature -- should be interpreted broadly; whereas, Congress seeks with the (f)(1) exemption of the CSA to recognize state laws authorizing certain activities, and exemptions -- by nature -- should be interpreted narrowly.

　　　　While this argument has some initial appeal, it is undercut because the Government ultimately asks the court "to give ['authorize'] its plain meaning under its primary definition, which is '[t]o empower, to give a right or authority to act,'" Def.'s Reply at 13–14 (quoting Black's Law Dictionary (6th ed. 1990)); the Murphy Court explained that "the repeal of a state law ban[] . . . gives those now free to conduct [the implicated activity] the 'right or authority to act'; it 'empowers' them," 138 S. Ct. at 1474.  As such, Murphy's construction encompasses Defendant's own assessment of the "primary" -- or "plain meaning" -- of "authorize."

online newspaper article on Vermont's legalization of recreational marijuana, see id. at 1474 n.28 ("'Vermont . . . bec[ame] the first [State] in the country to authorize the recreational use of [marijuana] by an act of a state legislature.'" (emphasis and alterations in original)).[22]  In addition, the Court opined that "one might well say" that a person is acting "pursuant to" state law "if the person previously was prohibited from engaging in the activity," and gave as a hypothetical example "[n]ow that the State has legalized the sale of marijuana, Joe is able to sell the drug pursuant to state law." Id. at 1474.  This marijuana-specific reference further convinces the court that Murphy's definition of "authorize" should inform the construction of the same term as used in the CSA.

Having determined that Murphy is pertinent to interpreting the CSA, the court proceeds to apply Murphy's holding to the case at bar.

### 3.    *Applying Murphy*

Applying a generalized version of Murphy's ruling[23] -- namely, that the repeal of a state law banning an activity gives those now free to conduct the activity in question the "right or authority" to so act -- the court concludes that Eteros is "authorized" for the purposes of 21 U.S.C. § 863(f)(1).

Consistent with Murphy's declaration that "[t]he concept of state 'authorization' makes sense only against a backdrop of prohibition or regulation," when Congress enacted section 863 of the CSA in 1990,[24] Washington State prohibited the use, delivery, manufacture, possession, and

---

[22] The court notes that Vermont's "act of state legislature" is pertinently entitled "An act relating to eliminating penalties for possession of limited amounts of marijuana by adults 21 years of age or older" (emphasis added)).

[23] Recall that Murphy held "[t]he repeal of a state law banning sports gambling . . . gives those now free to conduct a sports betting operation the 'right or authority to act.'"  138 S. Ct. at 1474.

[24] See Posters 'N' Things, 511 U.S. at 516 n.5.

advertisement of drug paraphernalia.  See, e.g., Kerry Murphy Healey, Nat'l Inst. Just., State and

Local Experience with Drug Paraphernalia Laws 135 (1988):

| STATE/STATUTE | OFFENSE | CLASSIFICATION | SENTENCE |
|---|---|---|---|
| **WASHINGTON:** Rev. Code of WA. 69.50.102 (1981) | | | |
| 69.50.412(1) (1981) | use | misdemeanor | imprisonment in county jail not more than 90 days, or fine not [more] than $1,000, or both |
| 69.50.412(2) (1981) | delivery, manufacture, possession | misdemeanor | (see above) |
| 69.50.412(3) (1981) | delivery to minor at least 3 yrs. younger | gross misdemeanor | imprisonment in county jail not more than 1 yr., or fine not [more] than $5,000, or both |
| 69.50.412(4) (1981) | advertisement | misdemeanor | (see above) |

Part and parcel to Washington State's legalization of adult recreational marijuana use via Initiative

502 in November 2012, supra p. 4, the Washington legislature amended its prohibitions on drug

paraphernalia to read in relevant part:

> (1) It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana.  Any person who violates this subsection is guilty of a misdemeanor.

> (2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana.  Any person who violates this subsection is guilty of a misdemeanor.

Wash. Rev. Code § 69.50.412 (2013) (emphasis added).  Moreover:

> (1) Every person who sells or gives, or permits to be sold or given to any person any drug paraphernalia in any form commits a class I civil infraction under chapter 7.80 RCW.  For purposes of this subsection, "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing,

injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance other than marijuana.

Id. § 69.50.4121 (emphasis added).  As previously discussed, supra p. 13, by including the phrase

"other than marijuana," the Washington legislature established that it is no longer "unlawful" -- or

in other words, that it is now legal -- to deliver, possess, and/or manufacture marijuana-related

drug paraphernalia in Washington State.  Thus, per Murphy, against this "backdrop of prohibition,"

Washington State's "repeal[ of] old laws banning" certain conduct surrounding drug paraphernalia

"'authorize[s]' that activity."  See 138 S. Ct. at 1474.[25]

---

[25] Having determined that Murphy applies, the court disposes of several of the Government's counterarguments on the basis of Murphy's reasoning:

    First, the Government contends that Wash. Rev. Code § 69.50.412 does not "authorize" anyone for the purposes of the (f)(1) exemption because "[t]he word 'authorize . . . ordinarily denotes affirmative enabling action.'"  Def.'s Reply at 6 (quoting County of Washington v. Gunther, 452 U.S. 161, 169 (1981)).  In Murphy, the Respondent National Collegiate Athletic Association made just such an argument, see 138 S. Ct. at 1473 ("[Respondents] claim that the primary definition of 'authorize' requires affirmative action." (emphasis in original)), but the Murphy Majority instead adopted the Petitioner's view, see id. at 1474 ("In our view, petitioners' interpretation is correct:  When a State completely or partially repeals old laws banning sports gambling, it 'authorize[s]' that activity." (alteration in original)).  Here, Washington State repealed certain prohibitions on marijuana-related drug paraphernalia, and thus, per Murphy's instruction, "authorized" the implicated activities.

    Next, the Government asserts that "[a]uthorization . . . requires a person-specific endowment of authority" and that mere "legality" is not the standard.  See Def.'s Oral Arg. Subm. at 9.  Noting that Washington administers a "marijuana retailer license" under section 314-55-079 of the Washington Administrative Code, the Government contends that "[i]f legalization constituted the type of blanket authorization suggested by Eteros, then Washington would not have needed to create a licensing regime."  See Def.'s Reply at 10.  Such an argument resembles the United States' position in Murphy that the Court should reject Petitioners' interpretation of "authorize" because "one 'would not naturally describe a person conducting a sports-gambling operation that is merely left unregulated as acting "pursuant to" state law.'"  138 S. Ct. at 1474 (citation omitted).  The Court disagreed, asserting "one might well say exactly that if the person previously was prohibited from engaging in the activity."  Id.  Here, Washington State previously prohibited, inter alia, the possession of marijuana-related drug paraphernalia, supra p. 22; today, Washington State allows such possession, see Wash. Rev. Code § 69.50.412 (2022).  As previously established, Washington's "authorization" of Eteros to possess marijuana-related drug paraphernalia is alone sufficient to render all of section 863 inapplicable under the (f)(1) exemption.  Supra p. 12.  Per Murphy, that Washington does not now require a license or other person-specific endorsement to possess marijuana-related drug paraphernalia -- or in other words,

Accordingly, the court concludes that Washington State "authorize[s]" Eteros for the purposes of 21 U.S.C. § 863(f)(1).[26]

---

has "left [possession] unregulated," 138 S. Ct. at 1474 -- does not vitiate the authorization conferred by Washington's repeal.  (The court, however, notes that even though Washington State's "authorization" of possession is sufficient to render section 863 of the CSA inapplicable, persons must -- of course -- abide by remaining applicable laws, including if relevant, Washington's retail license requirement.)

Finally, the Government argues that Eteros' construction of "authorize" "effectively nullif[ies] section 863."  Def.'s Oral Arg. Subm. at 6.  This is so, in the Government's view, because the (f)(1) exemption only requires "authorization" by one legislative body -- be it local, state, or federal -- to engage in one enumerated activity -- be it manufacturing, possessing, or distributing drug paraphernalia -- and "[p]ossession of drug paraphernalia has always been legal under Federal law."  Id. at 2.  Thus, the Government maintains that "under Eteros'[] interpretation, every person already qualifies for the (f)(1) exemption."  Id.  The Government's argument overlooks a critical component of Murphy's holding, namely that "[t]he concept of state 'authorization' makes sense only against a backdrop of prohibition or regulation."  138 S. Ct. at 1474.  The Court explained:

> A State is not regarded as authorizing everything that it does not prohibit or regulate.  No one would use the term in that way.  For example, no one would say that a State "authorizes" its residents to brush their teeth or eat apples or sing in the shower.  We commonly speak of state authorization only if the activity in question would otherwise be restricted.

Id.  The Government itself acknowledges that "[p]ossession of drug paraphernalia has always been legal under Federal law."  Def.'s Oral Arg. Subm. at 2; see also Mellouli v. Lynch, 575 U.S. 798, 803–04 (2015) ("Federal law criminalizes the sale of or commerce in drug paraphernalia, but possession alone is not criminalized at all.").  Thus, there is no "backdrop of prohibition" against which to find the Federal Government has "authorized" possession of marijuana-related drug paraphernalia.  Where the Federal Government simply has "not prohibit[ed] or regulate[d]" drug paraphernalia possession, see Murphy, 138 S. Ct. at 1474, this court cannot find authorization for the purposes of 21 U.S.C. § 863(f)(1).

In short, the Government's counterarguments fail to displace Eteros' construction in light of Murphy.

[26] Because the court deems Eteros "authorized" on the basis of Murphy, the court need not address Plaintiff's additional arguments that the Government's proposed construction violates the constitutional anticommandeering doctrine or 21 U.S.C. § 903 (instructing that no provision of the subchapter within which section 863 falls "shall be construed as indicating an intent on the part of the Congress to occupy the field . . . to the exclusion of any State law . . . unless there is a positive conflict . . . so that the two cannot consistently stand together").  See Pl.'s Reply at 24–30, 33–36.

### C.    The Court's Holding Is Consistent with the Statute's Purpose.

Having applied <u>Murphy</u> to hold that Washington State law "authorize[s]" Eteros under 21 U.S.C. § 863(f)(1), the court pauses briefly to consider the Government's arguments that such a construction is incompatible with the purpose of the CSA.  While courts must indeed "be sensitive to the possibility [that] a statutory term that means one thing . . . in one context might . . . mean something different in another context," <u>Bostock v. Clayton Cnty.</u>, 140 S. Ct. 1731, 1750 (2020), the court discerns no inconsistency here.

To start, the plain text of the (f)(1) exemption suggests Congress contemplated non-uniform applications of subsection 863(a)'s prohibitions on selling, transporting, and importing/exporting drug paraphernalia.  This is so because Congress used a disjunctive "or" to make local, state, and federal "authoriz[ation]" each individually sufficient to render all of section 863 inapplicable.  <u>See</u> 21 U.S.C. § 863(f)(1) ("This section shall not apply to" "any person authorized by local, State, <u>or</u> Federal law to manufacture, possess, or distribute such items." (emphasis added)); <u>see also</u> <u>supra</u> p. 11–12.  Because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," <u>Conn. Nat. Bank v. Germain</u>, 503 U.S. 249, 253–54 (1992), the court assesses that it is Congress's design that subsection 863's applicability can -- and will -- vary state to state and even locality to locality.

For its part, the Government invokes the legislative history of the Mail Order Drug Paraphernalia Control Act -- which became 21 U.S.C. § 857 and was ultimately transferred to the current 21 U.S.C. § 863 -- to argue that Congress's overarching intent was "to create national uniformity with regard to drug paraphernalia."  Def.'s Br. at 17.  Quite apart from the argument's incongruity with Congress's use of the disjunctive "or," <u>see</u> <u>Bostock</u>, 140 S. Ct. at 1750 ("[L]egislative history can never defeat unambiguous statutory text."), this legislative history -- which concerns a predecessor of section 863 that contained no exemptions at all, let alone an

exemption akin to that of (f)(1) -- is inapposite.  See Mail Order Drug Paraphernalia Control Act:

Hearing on H.R. 1625 Before the Subcomm. on Crime of the H. Comm. on the Judiciary, 99th

Cong. 2–5 (1986) (text of the bill referred to the Committee).   The Government itself

acknowledges that "there is no legislative history specific to the text that became the 21 U.S.C. §

863(f)(1) exemption." Def.'s Oral Arg. Subm. at 11.  As such, the court privileges -- as it must --

the current text of the statute to discern Congress's purpose, which clearly contemplated

nonuniform applications of section 863's provisions.[27]

Nor does the court agree with the Government's implication that Congress intended with

the exemptions provided at 21 U.S.C. § 863(f) to shield only persons from prosecution, but not

items from seizure.  See Def.'s Br. at 18 n.17; Def.'s Reply at 7.[28]  Such an interpretation does not

comport with a full reading of section 863.  While it is true that "subsection 863(f)(2) exempts an

---

[27] The court is also unpersuaded that the holding here will "recreate…[a] loophole" "whereby the prohibition of drug paraphernalia in one state [will] easily [be] overcome by the lack of such prohibition in other states." Def.'s Br. at 17.  Washington State can only "authorize" persons to partake in the enumerated activities of the (f)(1) exemption within the confines of its own borders; if the drug paraphernalia leaves Washington, the "authoriz[ation]" inquiry begins anew in the context of the new state.  Perhaps, as the Government suggests, "requir[ing] an authorization that is specific to the person" would "ensur[e] greater tracking and verifiability" of drug paraphernalia.  See Def.'s Oral Arg. Subm. at 13–14.  However, these are policy considerations best left to Congress's sound discretion.

[28] The Government quotes an unpublished opinion from the United States District Court for the District of New Mexico.  See United States v. Assorted Drug Paraphernalia Valued at $29,627.07 & Jason Fernandez, No. 18-143, 2018 WL 6630524, at *8 (D.N.M. Dec. 19, 2018) ("Jason Fernandez") ("Congress intended to shield from prosecution those persons who were 'authorized by [law] to manufacture, possess, or distribute [drug paraphernalia],' but did not intend to also shield the drug paraphernalia itself from lawful forfeiture." (alterations in original)).  This court notes that Jason Fernandez dealt with a cause of action brought under 21 U.S.C. § 881, a civil forfeiture provision that provides, in relevant part, "[t]he following [property] shall be subject to forfeiture to the United States and no property right shall exist in . . . any drug paraphernalia (as defined in section 863 of this title)."  21 U.S.C. § 881(a)(10).  The parties to the case at bar have not submitted any briefing on 21 U.S.C. § 881 and the court takes no view on whether section 881 -- or any other basis -- could justify excluding merchandise similar to the Subject Merchandise in future cases.

entire category of <u>items</u>,[29] while subsection 863(f)(1) . . . applies to . . . <u>person[s]</u>," Def.'s Br. at 17–18 (emphasis in original) (footnote and alterations added), recall that when the (f)(1) exemption is implicated, the entirety of section 863 no longer applies, including subsection 863(c)'s basis for seizure and forfeiture, <u>see</u> 21 U.S.C. § 863(c) (instructing "[a]ny drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture <u>upon the conviction of a person for such violation</u>" (emphasis added)).  Thus, at least for the purposes of 21 U.S.C. § 863, where a person is "authorized" and cannot be convicted under subsection 863(a), there can correspondingly be no "seizure and forfeiture" of the implicated drug paraphernalia "upon the conviction of a person" under subsection 863(c).

In sum, upon consideration of the ordinary meaning of the statutory terms, relevant case law, and Congress's purpose, the court determines that Eteros is "authorized" under 21 U.S.C. § 863(f)(1) such that § 863(a)(3)'s federal prohibition on importing drug paraphernalia does not apply to Eteros' Subject Merchandise at the Port of Blaine, Washington.  The court reiterates that it is not within its province to weigh policy arguments regarding the merits of legislation or to entertain invitations to rewrite legislation; its charge is to interpret and apply the statute as enacted by Congress.  Insofar as the Government seeks a different statute, that argument can be addressed

---

[29] 21 U.S.C. § 863(f)(2) provides in relevant part:

> (f) Exemptions
>
> This section shall not apply to—
>
>> . . .
>
>> (2) <u>any item</u> that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

21 U.S.C. § 863(f)(2) (emphasis added).

to Congress.  See Bostock, 140 S. Ct. at 1753 ("The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress.").

## CONCLUSION

CBP excluded Eteros' Subject Merchandise "under the authority of 19 C.F.R. § 151.16(j)," see Compl. at 9–10, Ex. F; Answer at 3, which allows for the seizure, forfeiture, and/or exclusion of detained merchandise "[i]f otherwise provided by law," 19 C.F.R. § 151.16(j) (emphasis added). In so excluding, CBP reasoned that "[21 U.S.C.] § 863(f)(1) does not provide an importer a means to enter drug paraphernalia," like the Subject Merchandise.  Compl. at 9–10, Ex. F; Answer at 3. The court now holds that Washington State "authorize[s]" Eteros under the exemption at 21 U.S.C. § 863(f)(1) such that section 863 -- including the prohibitions of subsection (a) and the basis for seizure and forfeiture under subsection (c) -- is inapplicable to Eteros' Subject Merchandise at the Port of Blaine, Washington.  In so holding, the court concludes that in light of the particular circumstances, 21 U.S.C. § 863 does not justify the seizure or forfeiture of the Subject Merchandise required for exclusion under 19 C.F.R. § 151.16(j).

Accordingly, the court directs CBP to release Eteros' Subject Merchandise at the Port of Blaine, Washington.

**SO ORDERED.**

/s/  *Gary S. Katzmann*
 Gary S. Katzmann, Judge

Dated: September 21, 2022
           New York, New York